## Gordon, Ex'r, Apt. *vs.* West & a.
## West & a., Apts. *vs.* Gordon, Ex'r.

Where, in pursuance of the provisions of a will, the executor is to deliver over to legatees property specifically bequeathed to them, and in his account he charges himself with the articles as inventoried, and discharges himself by the delivery over, he is not entitled to commissions on such charges.

An executor or administrator is entitled to be allowed for his services in receiving, securing, investing and paying out monies, and may, for such services, be allowed a commission upon the amount of money, varying according to the labor, risk, responsibility or trouble of each particular case; and two and a half per cent. was allowed as an ordinary commission.

Where a will gave the interest of the monies belonging to the estate to the widow, during her life, and the principal to certain other persons, on her decease—*held*, that the executor was entitled to compensation for the care and custody of the fund, and for collecting and paying over the interest, annually, during that time; and the executor accounting for six per cent. interest, *held further*, that one per cent. annually was a proper compensation for this service, and that one quarter of it be charged upon the principal fund, and the remainder upon the income.

An executor or administrator is accountable for all he receives on the sale of property belonging to the estate, and for the full amount collected by him upon all debts due; but if he receives from a debtor an allowance, over and above the amount of the demand, for extra trouble in the settlement and adjustment of it, he is not bound to account for that. And if he should exact and receive extra interest, he could not be charged with the usury in his administration account.

Where an executor, with power to sell land, cut and sold timber from the land, and afterwards sold the land itself, in pursuance of the will—*held*, that he was chargeable in his administration account with the value of the timber, as well as of the land.

APPEALS from a decree of the judge of probate for the county of Cheshire, allowing the administration account of W. Gordon, as executor of the last will of B. West.

By the will of said West, made July 11th, 1817, he bequeathed to his wife his household furniture, &c. &c.—the interest of what money should be due him at his decease, (after payment of his debts and expenses of administration,)

during her life—also the use and profits of all his real estate not otherwise disposed of, during her natural life.

W. Gordon was made executor, and empowered, with the consent of Mrs. West, to sell and convey the whole, or any part of the real estate, " securing to her the interest of the purchase money during her life."

The will then gave all his real estate, not otherwise disposed of, to T. West, B. West, and the executor, after the death of Mrs. West ; to hold as tenants in common ; and if any of it should have been sold by the executor, it gave them the " purchase money, and the principal of the money due to my estate, to be equally divided," &c. And T. West was discharged from the payment of his promissory note to testator for $1500. After certain other bequests, it gave all other property of every kind to the executor, making him residuary legatee.

The executor accepted the trust, and gave bond in the usual form. He rendered an account, September 8, 1820, and a second account, upon which a hearing was had in the probate court, November 18, 1834, Mrs. West being still living.

In this account he charged the estate with commissions of 2 1-2 per cent. on $5694.70, being that portion of items charged in his first account, upon which commissions in that account were omitted to be charged, $142.37

Commissions of 2 1-2 per cent. on the amount of certain items in the second account, 249.13

Executor's time, trouble, and responsibility in taking care of and preserving to the residuary legatees $3467.50, being the amount of proceeds of sale of certain lands belonging to the estate, from November 4, 1826, to September 28, 1834, 272.64

Executor's time, trouble and responsibility in taking care of and preserving to residuary legatees $4029, (being amount of balance in his hands on rendi-

tion of the first account, and of certain debts collected afterwards,) from September 28, 1820, to September 28, 1834, at one per cent.,　　　564.00

The judge of probate disallowed these items, and from this part of the decree the executor appealed.

There were certain other items disallowed by the judge, from which appeal was taken by the executor; but as the questions arising upon those items involved no material principle, other than what arose upon the foregoing, it is not necessary to state them.

Upon the hearing, the claimants of the two thirds bequeathed to T. West and B. West, moved the court to charge the executor with the sum of $800, alleged to have been received by him of G. H. Ingersoll and D. A. White, on a claim in favor of the estate against one A. Hunt, over and above the sum of $4110, received and credited on said demand in his first account—but the judge refused to charge the executor with any part of said sum.

They also moved the court to charge the executor with the value of certain pine timber taken from a lot of land belonging to said estate, called the Brainerd lot, prior to the sale of said lot by the executor, on the 4th of November, 1826, amounting as alleged to 2000 dollars. Upon this the judge decreed and ordered that the executor ought not to be charged with the value of the timber; but as the executor received the benefit from the same, it was considered that it should go to cancel the charge of $564 for taking care of part of the personal estate, from September 28, 1820, to September 28, 1834, which was disallowed as aforesaid.

From these decisions the claimants of said two thirds appealed.

It appeared that the executor, in his first account, charged himself with the amount of the inventory of the personal estate, $3650 62, delivered to Mrs. West, and retained by himself, in pursuance of the provisions of the will, and discharged himself by a credit of the same amount. He also

charged himself with T. West's note, given up in pursuance of the will, and credited himself with a like amount to balance it. These, with a charge for three years' interest on monies in his hands, $544.68, make up the sum upon which commissions are now claimed, which were omitted to be charged in that account.

The other sum for commissions was on matters arising since the first account, and the remaining charges in controversy were for care and custody of the whole fund, and paying over the interest to Mrs. West from time to time.

Upon the report of an auditor, it further appeared, that many years previous to the death of the testator, one Asahel Hunt was indebted to the testator, and September 9, 1805, gave him an absolute deed of his farm. Subsequent to the execution of the deed, the testator gave Hunt a memorandum in writing, engaging to release the land, on payment of a certain sum in one year. Hunt conveyed the land by mortgage to one Rand, and afterwards by warrantee deed to his son ; and Rand assigned, and the son quitclaimed, to G. H. Ingersoll. After the quitclaim from the son, November 28, 1815, the testator gave a writing to Ingersoll, certifying that the deed from Hunt to him, although apparently absolute, was given to secure the payment of money, and stating the amount then due ; and agreeing that if the amount, with interest, was paid to him in a year, by the person who should have the right of redemption, he would release. The testator treated this conveyance as a mortgage up to the time of his death, July 29, 1817, and the debt then amounted to $4110.

Soon after the death of the testator, Ingersoll made some payments, but, being embarrassed, made an agreement with his brother, Nathaniel Ingersoll, to raise the money, and take the title, and hold it for his benefit. N. Ingersoll paid $1000, which the executor received under a contract to return it, with interest, if the terms of a conveyance could not be arranged ; but G. H. Ingersoll having, before this time,

mortgaged to a Miss Wetmore, the executor refused to convey directly to N. Ingersoll, as it might affect her security, and on this account that negotiation failed, and the money was paid back. After this, an arrangement was made by which the executor, and Mrs. West, with the assent of Ingersoll, conveyed to D. A. White, who had married Miss Wetmore ; the executor having previously obtained from T. West, and B. West, a written agreement, under seal, authorizing him to convey to White, on receiving the sum of $4110,—with which sum he charged himself in his first account, as "amount of debt secured by Col. Hunt's farm, sold by executor with consent of devisees and Mrs. West."

In effecting these arrangements the executor went twice to Boston and Salem, and was at other trouble in the business ; and in finally adjusting the matter he received of Ingersoll and White $500 beyond the amount of the debt as credited to the estate. He claimed a right to this, on account of the trouble and expense he had been put to. Ingersoll stated that the part of it which he paid was called bonus, or extra interest. The executor charged nothing to the estate for his time and trouble in arranging this business.

The Brainerd lot was a wood and timber lot ; and soon after the decease of the testator, the executor at different times took timber from it, and authorized others to do so, and in this way about fifteen acres had been cleared and fenced. Part of the timber had gone to the repair of buildings. The lot was sold, with the consent of Mrs. West, as authorized by the will, November 4, 1826. The auditor, if the executor was chargeable for the timber in the administration account, found the sum to be $450.

*C. H. Atherton*, for the executor, cited 13 *Pick.* 272, *Hayward* vs. *Ellis ;* 10 *Ves.* 184, *Fearns* vs. *Young ;* 10 *Pick.* 77, *Jennison* vs. *Hapgood ;* 3 *Rawle* 48, *Billington's Appeal, cited* 10 *Amer. Jurist* 364 ; 13 *Pick.* 328, *Dorr* vs. *Wainwright ;* 9 *Peters' Rep.* 461, *Fenwick* vs. *Chapman ;*

1 *Peere Williams* 242 ; 10 *Peters* 161, *Ventris* vs. *Smith;* 4 *N. H. R.* 166, *Adams* vs. *Morrison;* 5 *N. H. R.* 326, *Weeks* vs. *Weeks;* 10 *Mass.* 303, *Sargent* vs. *Towne;* 1 *Fairfield's R.* 365, *Fuller, Judge,* vs. *Young;* 4 *Kent's Com.* 75 ; 7 *Johns.* 227, *Jackson* vs. *Brownson;* 2 *Hayw.* 110, *Ballentine* vs. *Poyner;* 1 *Bailey* 467, *Bowmar* vs. *Wilson, cited* 12 *Jurist* 162 ; 13 *Mass.* 260, *Crocker* vs. *Fales & a.;* 8 *Mass.* 275, *Bigelow* vs. *Bridge;* 2 *Saund.* 412, *Lord Arlington* vs. *Merrick, and cases cited in note;* 13 *Mass.* 232, *Wyman* vs. *Hubbard & a.;* 10 *Johns.* 180, *Walsh* vs. *Bailie; ditto* 271, *Union Bank* vs. *Clossey.*

*H. Hubbard,* contra, cited 1 *Johns. Ch. Rep.* 27, *Green* vs. *Winter; ditto* 533, *Manning* vs. *Manning;* 10 *Pick.* 76, *Paine* vs. *Stone.*

PARKER, J. The first item in controversy, in this case, is the sum of $142.37, charged by the executor for commissions on the sum of $5694.70, accounted for in his first account, on which no commissions were then charged.

We are of opinion that this claim ought not to be allowed. In relation to the articles of personal estate delivered the widow, or retained by the executor, in pursuance of the will, and the note against T. West, which by the will was to be given up to him, there is no ground for a charge of commissions, which are sometimes a proper charge for the risk and trouble of receiving, holding, and paying out monies. In regard to the accruing interest, with which the executor charged himself in his first account, that by the will belonged to Mrs. West, and he discharged himself from it by a charge of the same amount paid over to her. The mere collection and payment of that interest is not, as will be shown hereafter, a proper charge upon the principal fund; but if the executor was entitled to receive any thing for that, it should have been charged upon the income, and

borne by her for whose benefit the service was performed. It is not necessary, therefore, to say any thing about a waiver for any claim on this account, by the settlement of the first account, in which commissions were charged on monies collected, but not on these sums.

The next item in the present account, is for commissions on certain monies received since the rendition of the first account. This, with the two following items, for time, trouble and responsibility in taking care of and preserving the monies belonging to the estate, may be considered together. There is a wide difference between the counsel, in relation to the principles which should govern this part of the case ; the counsel for the executor contending, that all his charges, as well those for collecting and paying over the interest to Mrs. West, as for collecting, preserving, and finally paying over the principal, are expenses of administration, and are properly charges against the fund itself, going to lessen its amount, and thereby reduce the interest to be paid her ; and that she is no other way to be accountable, or subjected to charge, being entitled by the will to six per cent. interest on the principal—while the counsel for the present claimants of two thirds of the residuum argue, that nothing is to be deducted from the principal sum except the charges for collecting and placing the monies in the hands of the executor ; or in other words, that nothing beyond the expenses of ordinary administration is chargeable upon the fund itself ; that when the principal sum is ascertained, that sum is by the will secured to B. West, T. West, and the executor. They admit that the executor is entitled to compensation for services subsequent to this, but say that all charges for the preservation and custody of the principal, as well as those for collecting and paying over the interest, are properly chargeable upon the income, and are to be deducted, as they occur, from the annual interest payable to Mrs. West.

We are of opinion that neither of these positions can be

maintained to the full extent. There are, in the settlement of many estates, certain services performed by the executor or administrator, in receiving, depositing, or loaning monies, and in again recalling and paying them out on final settlement, for which the executor or administrator cannot well charge by the day, as the service is performed at many different times, occupying fractions of days, of which it would be difficult to keep any very accurate account. There is also a risk and a responsibility attached to this receipt and custody of the money, varying, perhaps, materially in its extent, according to the peculiar circumstances of individual cases, but for which in many instances it is proper a compensation should be paid. It is immaterial whether this compensation be denominated commissions on monies received, held and paid over, or whether it be designated as services for collection, custody and disbursement of the monies belonging to the estate. In many instances the amount to be allowed should be graduated very nearly by the amount of the funds, but in others it is apparent that the amount received, and paid, would furnish no certain criterion, from having been received in but few sums, under circumstances that led to but little risk; easily secured so long as it was necessary before the final settlement, and to be disbursed with very little trouble to the agent—while on the other hand it might be varied by its appearing that the converse of all these propositions was true. The amount to be charged for these services, by whatever term it is denominated, is properly a part of the charges of administration, and I do not understand the claimants, in this case, to contend very strenuously against the allowance of something, upon this ground, to this executor, as a proper charge upon the general fund of the estate.

In addition to this ordinary duty of an executor, there is another superadded by the will in this case. The will provides, not merely for an ordinary administration, but for a trust in the hands of the executor, to continue during the

life of Mrs. West.    It gives her " the interest of what money shall be due me at my decease, (after the payment of my debts and expenses of administration,) during her life," and " the use and profits of all my real estate, (not in this will otherwise disposed of,) during her natural life ;" and empowers the executor, with the consent of Mrs. West, to sell the whole or any part of the real estate, " securing to her the interest of the purchase money during her life."    After certain devises over, of a portion of the real estate, it gives to three individuals, the executor being one, and the claimants in this case representing the other two, all his other real estate, after the death of Mrs. West ; and if any of the real estate shall have been sold by the executor, it gives them " the purchase money and the principal of the money due my estate," with certain exceptions, which are specified. There is no express provision for the charges and expenses attending this disposition.    All that is contained in the will respecting them is in the first clause above quoted, in which the interest of what money shall be due the testator, after payment of debts and expenses of administration, is given to Mrs. West during her life.    It is not even said who shall hold the fund and pay over the interest.    But this duty devolves upon the executor.    3 *N. H. R.* 147, *Claggett, Judge,* vs. *Hardy ;* 13 *Pick.* 331, *Dorr* vs. *Wainwright.* He is a trustee for that purpose.    If the argument of the executor's counsel was maintained, and if the executor was to receive any thing for care and custody of the funds, and for collecting and paying interest to Mrs. West ; or if he could not obtain six per cent. upon the money ; all charges and deficiencies must be annually deducted from the principal, which he admits would reduce the future interest.    But we think this was not in the contemplation of the testator, for by the terms of the instrument Mrs. West was not only to have the interest of what money was due the testator at his decease, after deducting debts and expenses of administration, but if land was sold, " the interest of the purchase

money" was to be secured to her. If interest on the purchase money necessarily meant six per cent. interest on that money, she must be entitled at all events to six per cent. annually, on the amount of the sale, which was probably not intended ; for if any of the real estate was sold by the executor, the will gave the three individuals before named "the purchase money," and also gave them "the principal of the money" due to the estate. This is as explicit as that Mrs. W. was to receive the interest. If, after the monies due the estate were collected, and the lands sold, the executor was bound to pay Mrs. West six per cent. interest annually upon the principal during her life, (which was all the law would permit him to receive on a loan of the money,) and was further obliged to pay over the whole principal, without diminution, on her decease, as the claimants contend, he had certainly assumed no enviable trust, unless his own share of one third of the principal might be supposed to be of a sufficient amount to remunerate him for all trouble and losses. But it is not suggested that the testator intended the bequest of this third should be any compensation for the services of the executor.

On the other hand, the argument of the claimants gives too rigid an interpretation on that side. If a portion of the principal should be lost by some unforeseen contingency, against which no prudence of the executor could guard, and without any fault on his part, is he to be charged in such case with the loss, and to be accountable still to Mrs. West, for interest on the amount so lost, and to the other legatees for the principal, on her decease? It seems not. 13 *Pick.* 332. Or if some portion of the fund was in jeopardy, without his fault, and expenses should be incurred in providing for its security, unless the executor is an insurer, and authorized to charge as such, the expenses would be for the benefit of those entitled to the principal, as well as for the benefit of the annuitant, and should be a charge upon the fund itself. The executor is not obliged to keep the fund in his

own hands, and pay interest on it; and it might often be necessary to receive in a portion of the principal, and to make a new loan, or reïnvestment.    This being service relating to the custody and care of the principal, would be a proper charge against the principal.    2 *Wend.* 77, 106, *DePeyster* vs. *Clarkson.*    And so of the general care, custody and the responsibility resting on the executor in the preservation of the fund, which is greater or less in different cases.    That is properly a charge upon the fund itself. 12 *Pick.* 179, *Ellis* vs. *Ellis.*    A different rule seems to have prevailed in England, and New-York.    1 *Johns. Ch. R.* 37, *and cases cited.*    All the reasons of that rule, however, do not apply here, where executors ordinarily are obliged to give bonds, equally with administrators.    1 *Johns. Ch. R.* 533.    And it has never been adopted in this State.

But the mere collection and payment of the interest is a service performed, in this case, for the benefit of Mrs. West, and is a proper charge upon the income.    12 *Pick. Rep.* 183. When the testator gave the interest to Mrs. W. he must have intended the net interest, after the payment of the proper charges of collecting and paying it over; and so when he gave the principal, and the purchase money, to the others, he could not have intended to exclude such reduction of it as might occur before it became payable, for the services of the executor, in its custody and preservation.    In relation to these matters, the testator did not deem it necessary to make any special provision.    The clause relating to debts, and expenses of administration, was intended to exclude a construction that Mrs. W. should be entitled to interest on the whole amount of the money; and the same construction must have been given to the will, if that had not been inserted.

The case stands in relation to these matters precisely as it would have done if the testator, instead of leaving the property in the hands of the executor, and thereby author-

izing him to pay over the interest to Mrs. West, had constituted him executor, and designated some other friend as trustee for that purpose, to whom the executor should pay over the principal. In that case, no provision being made for the compensation of the trustee, his services would be a charge upon the monies received by him. So far as they were performed for the benefit of all interested, they would be chargeable to the principal of the fund, and go to reduce it ; but so far as they concerned the mere collection and payment of the income, they would be properly chargeable to that.

The expenses of collecting and investing the fund, of its subsequent care and custody, and of finally recalling and paying it out, may be considered as properly expenses of administration. The services in receiving and paying over the annual income, were in the performance of a trust, for which, in this case, the testator may perhaps have supposed no charge would be made, by reason of the relationship of the parties.

The sales of the real estate were in pursuance of the provisions of the will; and the same rule applies to the monies received upon those sales, as to monies collected on debts.

Upon the appeal of the executor, therefore, we have concluded to allow two and an half per cent. commission on the principal of the monies collected and received since the rendition of the first account.

And we are further of opinion, that in ordinary cases of a trust, five per cent. annually is as great an interest as should be exacted of a trustee ; or, in other words, when the trustee accounts for six per cent. interest annually, one per cent. is a proper compensation to be allowed for the care and custody of the funds, and for collecting the income.

In this case, as the income goes to one, and the principal eventually to others, part of the service for which the per centage is allowed was for the benefit of all interested, and

part for the sole benefit of the party entitled to the income. It becomes necessary, therefore, to apportion it ; and we allow one quarter of it as a suitable charge upon the general fund, for care, custody, and responsibility, leaving the other three quarters to be accounted for by Mrs. West, if it is required.

It remains to consider the appeal on the part of the claimants of the two thirds.

We are of opinion that their motion to charge the executor with the $500, received of Ingersoll and White, was rightly overruled. The transaction between them and the executor cannot be regarded as a sale of the land. If it could be, the appeal might be sustained. But, although the testator had an absolute deed of the farm, he treated it as mere security for a debt, up to the time of his decease. And it was so treated afterwards by all interested. The legatees, B. and T. West, assented that the debt should be received and the land discharged. The attempt of Ingersoll was to redeem. Difficulties arose as to the manner. The executor refused to convey in such manner as might prejudice a subsequent incumbrance to the wife of White ; and the mode in which the conveyance should be made, on the payment of the money, was finally agreed by Ingersoll and White. The executor received the debt, and he received, also, of them, a sum in addition to it. Whether this be designated as a compensation for his trouble, as the executor states it, and if so, whether the amount be large or small ; or whether it be called bonus or extra interest, these claimants seem to have no title to it. If it was received as compensation for services, it belongs to the executor. If Ingersoll and White saw fit to make a very liberal allowance, that does not alter the case. If it was received as extra interest, which the auditor does not find, although in that case the executor might be liable to pay it back, he is not accountable for it to the claimants on the settlement of his administration account. It is true, as argued by their coun-

sel, that an executor or trustee is accountable for all he receives on sale of the trust property, and for the full amount collected upon the debts due the estate. But if he should exact and receive money contrary to law, we are aware of no rule which entitles those interested in the estate to claim the benefit of that. If they could substantiate such a claim, they ought to be liable to the penalty which would be incurred by the violation of the statute.

With the value of the timber taken from the Brainerd lot, the executor must be charged.

The argument of his counsel, made on behalf of the surety, that the executor, if liable at all, is liable personally for waste—that cutting the timber or directing it cut, was no act of his as executor, and that his authority by the will was strictly an authority to sell the land, with the consent of Mrs. West—cannot avail to discharge him from accounting for property which clearly belonged to the estate, and which has come into his possession and use. He had authority by the will to sell the land, with the consent of Mrs. West. If this gave him no right to sever the timber, and then sell the land, still when the timber was severed by him, or by his directions, and the timber itself, or the avails of it, came to his hands, he was bound to account for it as executor.

If his act in severing the timber was tortious, when severed the title was not changed, and the interest of B. West and others in the land being contingent, and having been since defeated by the sale, the avails of the timber became personal estate in the hands of the executor, to be disposed of in the same manner as if he had sold so much of the land. It is not for him to deny that his act in disposing of it was an act of administration. He might as well allege that he had converted any other of the personal property, and that in so doing he acted in his individual right, and was therefore not accountable as executor. And what he cannot allege, his surety cannot allege for him in this mat-

ter.  If the timber had been severed and converted by a third person, without his assent, some question might have arisen as to the mode by which a remedy was to be enforced by law.  But if the executor could in such case have recovered damages, (and as he had power to sell, with the consent of Mrs. W., perhaps he might have sustained an action) those damages must clearly have been carried into the administration account.  If, instead of a suit, he had taken possession of the timber after severance, and sold it, such sale would have been an act of administration.  And he is not to be in a better or different situation if he himself severs it.

This construction seems not only founded upon sound principles, but is necessary in order to preserve the interest of Mrs. W., who is in justice entitled to interest on the value of the timber.

Had the executor, instead of severing the timber and then selling the land, sold each separately, without any severance, and carried the avails into his administration account ; according to the argument, this would have been equally without right, but would it have been waste, or such a tortious act that those who had the contingent interest in remainder could have recovered against the executor, or the purchaser who severed it, the value, in damages, in an action on the case?  Certainly not.  Nor could they have recovered for the timber, as money received to their use.  If they could have maintained any action, it could only have been for the amount of injury sustained by the sale in this mode, instead of an entire sale.  The executor could not change the rights of those interested, by first disposing of the timber, and then selling the land in pursuance of the provisions of the will.

It was thereupon *Ordered and decreed* by the court, that

the executor be allowed sundry sums specified, amounting in the whole to $403.10, and that he be charged with $450, being the value of the timber taken from the Brainerd lot ; and that said sums be added to the amount credited and charged him in said account by the judge of probate ;—that the decree of the judge, so far as it relates to said items, be reversed ; and as to the residue of the matters specified in the appeals, that it be affirmed ;—that no costs be allowed to either party, and that the case be remitted to the probate court for further proceedings.