Rockingham, May 6, 1947. } No. 3658.

William M. McInnes, *Ex'r, Ap't*

*v.*

Joel E. Goldthwaite & a., *Tr's, Ap'es.*

*George R. Scammon, Edmund W. Ogden* and *Lindsey R. Brigham* (*Mr. Scammon* orally), for the plaintiff.

*McLane, Davis & Carleton* and *Stanley M. Brown* (*Mr. Brown* orally), for the defendant.

JOHNSTON, J. The plaintiff William M. McInnes defends the long continuance of his administration as executor on the ground that no demand was made on him for the assets. This position is untenable. It is true that the trustees who were appointed in 1933 must share with the executor the responsibility for the neglect to have the funds transferred to the trust for charitable purposes. Attorney Norton lived until 1937 and Dr. Goldthwaite is a member of the board appearing in the present proceedings. The latter was written April 25, 1931, by his fellow trustee that it would probably be nearly a year before the funds would be available and that he need do nothing about it in the meantime, and again on June 7, 1933, that the estate was approaching settlement and that he should consider the disposition of the trust estate. From the time of his appointment nothing was heard from trustee Goldthwaite until the petition asking for the appointment of his co-trustees.

However, an executor is bound to execute the provisions of a will with reasonable diligence. *Page* v. *Boynton,* 63 N. H. 190, 192. The provision for demand upon an executor (R. L., c. 355, s. 1) is intended for his protection against unnecessary suits; it is not an excuse for depriving of their rights by neglect or otherwise legatees that are

ignorant or persons under disability or beneficiaries of a charitable trust that are not adequately represented. "The executors were fiduciary representatives, holding the estate in trust, and bound to exercise reasonable and impartial care in protecting the rights of all the legatees. For many years they knew that the societies were not aware of the bequests made to them; and it was their duty to give the societies the information which was manifestly needed, and without which the third item of the will could not be executed. It was their duty to pay the legacies, or bring this bill without delay. Their obligation was to promptly execute the entire will of which they were executors, and not to defeat the third item by inaction. They were protected against an unnecessary and oppressive suit brought for a legacy, without such a demand as would give them a reasonable opportunity to perform their duty of payment. But this protection did not authorize them to sacrifice the rights of a legatee by such silence as would prevent a demand being made. By such silence they could not transfer the income of the trust fund from its equitable owners to others who had no title to it." *Tilton* v. *Society*, 60 N. H. 377, 384. This statement has been recognized as the law of this state in Hoyt's Probate Practice, *p.* 207, and in 3 Woerner, American Law of Administration (3d *ed.*) 1956. Probably one or two letters from the executor to trustee Goldthwaite would have sufficed to arrange for the transfer of the funds to the residuary trust, and the latter could have given a sufficient receipt. A surviving trustee or trustees have the power to receive assets belonging to the trust, regardless of any duty to apply for the appointment of co-trustees necessary or advisable to carry out the intention of a testatrix. "Where there are several trustees and one of them refuses to become or ceases to be trustee, the powers conferred upon them can ordinarily be exercised by the remaining trustee or trustees." 2 Scott, Trusts, *s.* 195, *p.* 1058. If the executor was in doubt as to his rights, he himself could have petitioned for the appointment of the additional trustees, and in default of any other procedure for terminating the executorship have asked the Superior Court for instructions what to do with the funds available for distribution.

Although the plaintiff has not brought to a close the administration of the estate of Ida O. Folsom with the diligence required of an executor, he has conducted it with honesty. "The duty of an executor generally is not to retain and invest, but to liquidate and terminate. . . . If, however, a valid reason exists for the retention of a fund by the executor, it is incumbent upon him not to permit such fund to

remain idle, but to invest it." *In re Kohler's Estate*, 348 Pa. 55, 57. All investments made by this executor have been strictly such as are permitted trustees by statute. His breach of fidelity consisted primarily of procrastination. It remains to be seen wherein the defendants have been damaged.

The Trial Judge ruled that the plaintiff was liable for a loss of $4,872.33 on Eastern Gas and Fuel, common and preferred stock. These were two of the non-legal securities left by Miss Folsom. They were sold in 1945 with the above stated depreciation from the value one year after the appointment of the executor. Some fifteen securities left by the testatrix other than those sold in 1931 but including the two under consideration were inventoried at a figure of $174,380.39 and were worth $100,389.25 a year later. When sold or delivered to the trustees they were worth $198,493.45. Even if the executor committed a breach of his fiduciary duty in holding the Eastern Gas and Fuel stocks for an unreasonable time, there was but one breach of trust with respect to all fifteen securities and the executor is accountable only for the net gain and not liable for any net loss since there is none. "Where, however, there are not two separate and distinct breaches of trust, the trustee is liable only for the net loss or accountable for the net gain." 2 Scott, Trusts, *s.* 213.1, *p.* 1138, and cases cited. In the *Estate of Porter*, 25 N. Y., Supp. 822, the administrators received among the assets certain shares of stock of a speculative character and they took the risk of retaining them. Large sums were received in dividends and some of the stocks were disposed of for more than the inventoried value of the whole. The administrators acted in good faith and with great judgment. It was held that they should not be charged with the losses on some of the stocks but accountable only for the net profit. As in the present case the administrators followed a settled and consistent policy concerning the securities left by the deceased, which as a whole resulted advantageously. So, in *MacBryde* v. *Burnett*, 132 F. (2d) 898, cited in the supplement to 2 Scott on Trusts, *s.* 213.1, *n.* 14, where a trustee purchased shares of a corporation and some were sold at a profit and others at a loss, the investment was treated as an entirety and he was held liable only for the net loss. Whatever the plaintiff's reason for delaying his accounting, his one policy of holding the securities during the economic depression of the thirties not only resulted in practically doubling their worth from the time of one year after his appointment but yielded a very substantial profit over the inventory values. The exception to this surcharge is sustained.

Another surcharge was for interest of $2,476.77 on monthly balances of uninvested funds for ten years from March 1, 1932 averaging $4,127.09. Due to the long continuation of the plaintiff's handling of the estate, he invested surplus funds as a trustee and should be held to the duties of a trustee in this respect. "At the expiration of the year it became the duty of the executor to pay the legacy, and the relative rights of the hospital and the remaindermen became fixed as of that date. After that time, so long as the executors retained in their possession the fund created by this bequest, they held it in trust for the proposed hospital." *Dennison* v. *Lilley*, 83 N. H. 422, 425. A trustee should not be liable for the failure to keep all the funds invested unless there has been neglect on his part. "If a guardian or trustee keeps the funds of his trust separate from his own, and accounts for the interest received, he is not to be charged when the money lies idle, except for his neglect; and it cannot be considered neglect if a sum sufficient to meet contingent expenses be kept on hand, or if a sum so small that a prudent person would not seek an investment for it lies idle." *Knowlton* v. *Bradley*, 17 N. H. 458, 460. Undoubtedly, the plaintiff could have kept a smaller cash balance at times, but a checking account was necessary. Income had to accumulate until there was a proper amount for investment. There were the usual expenses of an executor and a trustee. The large monthly balances of over $7,000 for 1940 and of over $10,000 for 1941 raise the average substantially for the period and are explained by the approaching termination of the executorship. The balances for prior years were not so unreasonably large as to constitute neglect. The plaintiff is not liable for failure to earn interest on the funds carried in the checking account.

The executor took possession of the real estate soon after his appointment and under license from the Probate Court sold it in February of 1940 for $8,000 plus the broker's fee of $325. He asks credit for maintenance and carrying charges on this property amounting to $8,383.87. There was no income. His right to sell under the decree of the Probate Court cannot be attacked collaterally. The court had jurisdiction. R. L., c. 358, s. 17. "If for any reason they [decrees of the Probate Court] ought to be reopened, so that the proceedings leading up to them can be reviewed, the desired relief can be had only in some direct proceeding." *Scammon* v. *Pearson*, 79 N. H. 213. See also, *Wilson* v. *Otis*, 71 N. H. 483; *Mansfield* v. *Holton*, 74 N. H. 417. Since it has been adjudged that the plaintiff had the right to sell, he had sufficient interest in the real estate to give him a right to incur

reasonable charges of maintenance for a reasonable period of time. "If the estate is insolvent and settled in the insolvent course, it is the duty of the administrator to take possession of it, take care of it, and take the rents and profits." *Lucy* v. *Lucy*, 55 N. H. 9, 10. He seeks credit for taxes paid amounting to $2,682.27; insurance, $299.55; repairs, $199.15; labor in keeping the premises presentable, $4,618.23, and other expenses. The total is $8,383.87. The Trial Judge disallowed the entire claim on the ground that the executor had no interest in the real estate. Accordingly, there must be a new trial to determine what credit should be given. As events turned out, it would have been a saving for the estate to have given the real property away in the beginning, but the executor is not liable for an error of judgment if he used reasonable care and diligence in the sale of the real estate. It could of course have been auctioned off at any time and continuing expense was certain in time to exceed the value of the property. It should be determined how long under the circumstances it was reasonable for the executor looking ahead to keep the premises (*Heaton* v. *Bartlett*, 87 N. H. 357) and what expenses he reasonably incurred for maintenance and carrying charges during such period. For these he should have credit. Keeping the premises longer would be neglect or mismanagement. Moreover, if the plaintiff can prove that the price of $8,000 obtained exceeded what he would have received by selling at the end of the period during which it is found that the premises might reasonably be kept, he is entitled to have the credit of additional reasonable expenses not exceeding the gain less the loss in income by reason of keeping the unproductive property. In other words he cannot have credit for unnecessary expenses, unless the estate benefited and then only to the extent of the net benefits. The letter of counsel to the effect that the claim of defendants is limited to the question of whether the executor had any right to the real estate is not conclusive.

The executor asks for additional fees for services, commissions and allowances for counsel fees. He has received $5,500 for himself and $3,000 for counsel, to which no objection is made. This matter rests in the sound discretion of the Trial Court and in view of the present opinion should be reconsidered by it. This is not an intimation that these allowances should or should not be increased. While the form of an executor's compensation may be a commission, he is entitled only to payment for services rendered with the amount dependent upon the labor, risk, responsibility and trouble of each particular case. It perhaps is unnecessary to state that he is not entitled to a

bonus or to double pay for services. *Lucy* v. *Lucy, supra.* As stated above, the estate has suffered no loss unless in the handling of the real estate. The executor should not be penalized if the estate is protected against this loss. To what extent, if any, additional compensation should be denied because of the unreasonable delay in terminating the executorship must be left to the discretion of the Superior Court. Certainly he should not profit by this delay. He may properly be paid for the services performed on the basis of what they would be worth and what detriment they would be if rendered in a period reasonably required for the settlement of the estate. Such period could properly be found to have terminated some time between the end of 1933 and the end of 1937. "Where his compensation is reduced or denied, this is done not for the purpose of imposing a penalty upon him for committing a breach of trust but on the ground that he has not properly performed the services for which compensation is given." 2 Scott, Trusts, *s.* 243, *p.* 1404. Although stated with respect to a trustee it is also applicable to an executor. Because of the foregoing considerations and the fact that the greater part of the income received was from securities left by the testatrix and not from investments made by the plaintiff, he should be paid as an executor and should not be allowed in addition a commission on income such as might be allowed a testamentary trustee. Attorney fees cannot be given credit to the extent made necessary by fault of the executor. *Page* v. *Boynton, supra.*

*Case discharged.*

All concurred.