Carroll
No. 87-306

## ATLANTIC RESTAURANT MANAGEMENT CORPORATION

v.

## LOUISE MUNRO

May 13, 1988

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Arthur G. Greene* and *Steven V. Camerino* on the brief, and *Mr. Greene* orally), for the plaintiff.

*Melendy & McCarron*, of North Conway (*Fay E. Melendy* on the brief and orally), for the defendant.

BATCHELDER, J. The defendant, Louise Munro, appeals the grant of summary judgment by the Superior Court (*Dunfey*, C.J.) to the plaintiff, Atlantic Restaurant Management Corporation (Atlantic), directing her to perform specifically her obligations under a real estate purchase and sale agreement entered into between Atlantic and her conservator. (The defendant died in September of 1986, and we are informed by counsel for Atlantic that this litigation is actually being furthered by her administrator and son, Thure Munro, who had not yet been substituted in the action "apparently because of . . . substantial confusion surrounding the probating of Mrs. Munro's will.") We affirm.

In 1984, Mrs. Munro was a resident at Merriman House, an intermediate care facility at the Memorial Hospital in North Conway. In August of that year, she petitioned the Carroll County Probate Court pursuant to RSA 464-A:13 to appoint one L. Hamlin Greene as the conservator of her estate. Mrs. Munro, then 89 years old and confined to a wheelchair, considered herself physically unable to attend to her financial affairs. On October 16, 1984, upon application and hearing, the conservator obtained a license from the probate court pursuant to RSA 464-A:27 to sell his ward's real estate. The conservator entered into an agreement with Atlantic on February 26, 1985, for the purchase and sale of Mrs. Munro's 2.93-acre commercial lot in North Conway. The agreement, which provided for a purchase price of $500,000, was a so-called "standby"

agreement in that it was subject to the conservator's right to sell the property at an equal or higher price at an auction scheduled for April 12, 1985. The agreement also provided that, if for any reason the property was not sold at the auction, the purchaser would be entitled to enforce the agreement.

In March 1985, the defendant was apprised of the existence of public auction signs on her property. In response, she petitioned the probate court on April 1 either to stay or revoke the license to sell or to terminate the conservatorship in order to prevent the sale of the land at auction. After a hearing on these issues, the probate court terminated the conservatorship, leaving the license outstanding, and the land was subsequently withdrawn from the April 12 auction. On April 13, Joseph Sullivan, president of Atlantic, tendered payment under the terms of the agreement to attorney Maurice Geiger, Mrs. Munro's counsel at the time, who refused the payment. On April 23, Sullivan received a letter from Thure Munro, which stated that his mother had no prior knowledge of the contract between her conservator and Atlantic and that she considered the contract to be invalid. Atlantic filed a petition for specific performance on April 26 and subsequently filed a motion for summary judgment on that petition. The defendant objected, and a hearing was held on January 14, 1986. Mrs. Munro died the following September, before a ruling on the summary judgment motion was issued. Upon motion of the administrator, the superior court issued its ruling granting summary judgment to Atlantic on July 10, 1987. This appeal followed.

In its written order, the trial court found that the contract between Atlantic and the defendant's conservator was binding on the defendant because it was entered into pursuant to a valid license to sell granted by the probate court. The order stated that this finding was reinforced by the probate court's refusal to stay or to revoke the license. Moreover, the court found that the intervening termination of the conservatorship in no way affected the validity of the contract. Concluding that Atlantic had sustained its burden of proving that no genuine issue of material fact was present, *see* RSA 491:8-a, the court granted summary judgment and, in doing so, effectively ordered Mrs. Munro to convey the subject property to Atlantic for the agreed-upon price.

This case is brought before us on limited grounds. The defendant has conceded the validity of the contract. In addition, she does not challenge the validity of the license to sell, nor could she, as she is precluded from doing so collaterally. *McInnis v. Goldthwaite*, 94 N.H. 331, 336, 52 A.2d 795, 799 (1947); *Gordon v. Gordon*, 55 N.H.

399, 402 (1875). The defendant's position, rather, is that specific performance is an inappropriate remedy under circumstances where she claims she neither had knowledge of the contract nor consented to its formation. The defendant argues that the appropriate remedy is damages, and if damages are proved, they would be properly assessable only against the conservator. The defendant also argues that the trial court erred in partially relying, for its finding that the contract is binding, on the probate court's refusal either to revoke or to stay the license. We can quickly dispose of this last point, however, by noting simply that since the defendant has conceded the validity of the contract, it does little to advance her position to challenge the reasons for which the trial court found the contract valid. Also, because we hold that specific performance was appropriate in this case, there is no need to address the alternative argument that the conservator is liable for contract damages.

 The granting of specific performance of a contract is a matter within the sound discretion of the trial court, which bases its decision upon consideration of all of the circumstances of the case. *Gulf Oil Co. v. Rybicki*, 102 N.H. 51, 52, 149 A.2d 877, 879 (1959). In contracts for the sale of land, the inadequacy of the legal remedy is well settled, and specific performance will be decreed absent circumstances rendering it inequitable or impossible to do so. *Id.* There must be "significant equitable reasons for refusing to grant [such relief]." *Chute v. Chute*, 117 N.H. 676, 678, 377 A.2d 890, 891 (1977). We will uphold a decree of specific performance unless it is unsupported by the evidence or based upon untenable grounds. *Allied Adjustment Serv. v. Heney*, 125 N.H. 698, 700, 484 A.2d 1189, 1191 (1984); *Gulf Oil Co. v. Rybicki supra.*

Although the defendant has conceded the validity of both the contract and the license to sell, she seeks to restrict the availability of the remedy of specific performance under circumstances where she claims she neither knew of nor consented to the contract. This argument is without merit. First, there has been no finding on the record by the trial court that the defendant neither knew of nor failed to consent to the contract. Thus, she is seeking reversal on grounds that have not been established on the record. Assuming, however, Mrs. Munro neither knew of nor consented to the contract between her conservator and Atlantic, such a fact would affect, if anything, only the validity of the license to sell real estate granted by the probate court. Since, as noted above, the defendant is precluded from attacking the validity of the license in this

proceeding, her purported lack of knowledge and consent is of no consequence to this case.

■■ Moreover, under the statute controlling the relationship between a ward and a conservator, RSA chapter 464-A, it is clear that a ward need not provide her consent to a contract, nor be apprised of its negotiation and formation. The only prerequisites for a conservator to dispose of his ward's real property are that he obtain a valid license to sell from the probate court and take the statutory oath as a fiduciary. RSA 464-A:27, :28, :29. Indeed, a conservator is empowered to "execute a valid conveyance of the estate" without the signature of his ward on the instrument. RSA 464-A:29. Additionally, under RSA 464-A:27, a license to sell is to be granted only upon petition of the conservator, accompanied by "consents signed by *all persons interested* in the [conservatorship] estate . . . . If such consents are not filed with the petition, the judge of probate may act on the petition only after notice and hearing." *Id.* (Emphasis added.) From this language, only interested persons are entitled either to provide their written consent to the license, or to be notified of and provided a hearing prior to the granting of a license. "Interested person" is defined in the statute as "any adult who has an interest in the welfare of the person to be protected." RSA 464-A:2, XIII. Consistently throughout the statute, "interested person" does not include the ward. *See, e.g.,* RSA 464-A:27, I ("The judge of probate, upon petition of the [conservator] of the estate or of any other person interested in the estate of any ward . . ."). Thus, the ward is not entitled to notice and is not required to consent prior to the sale of real estate. Finally, there has been no allegation that those who would be considered interested persons under the statute were not given notice of the application for the license.

In the absence of a statutory requirement for notice or consent, the defendant's considerable reliance on *Continental Cablevision of N.H. v. Osgood Lodge,* 123 N.H. 215, 459 A.2d 263 (1983) is misplaced. We held in that case that specific performance is an inappropriate remedy when performance by the contracting party is subject to the consent of a third person not privy to the contract. *Id.* at 219, 459 A.2d at 266. We noted that such is "particularly true when the third party has no knowledge of the execution" of the agreement. *Id.* at 220, 459 A.2d at 266. In *Osgood Lodge,* a local Odd Fellows lodge and the plaintiff entered into a lease with a purchase option of a building in Portsmouth. The plaintiff sought to exercise the option, but Osgood Lodge refused to execute the agreement because it could not obtain the consent of its Grand

Lodge, which was a requirement under the Odd Fellows Code. *Id.* at 217, 459 A.2d at 264. The evidence revealed that the Grand Lodge had no knowledge of the lease or purchase option; and, this court held, it would have been inappropriate to force the Grand Lodge to consent to the contract by ordering specific performance. *Id.* at 220, 459 A.2d at 266.

Here, there was no requirement that the conservator obtain the ward's consent to the contract. Under the authority of RSA 464-A:29, once the conservator obtained the license to sell and was duly sworn, he was empowered to convey the property.

■ In sum, we see no significant equitable reason for specific performance to have been denied in this case. Even if the defendant did not know of or consent to the contract, neither of which were established on the record, such a fact would only affect, if anything, the validity of the license in a direct attack upon the propriety of the license. Moreover, the statutory framework of RSA chapter 464-A suggests that the ward is not entitled to notice of a petition for a license, nor is she entitled to provide consent to a subsequent sale. To hold otherwise would vitiate the purposes and policies underlying the law of conservatorships as embodied in RSA chapter 464-A, as well as create instability in contracts between bona fide purchasers, which the defendant concedes Atlantic is in this case, and duly appointed and licensed conservators.

*Affirmed.*

BROCK, C.J., concurred specially; the others concurred.

BROCK, C.J., concurring specially: In my view, the only issue before us is whether the remedy of specific performance was appropriate in this case. Stripped of its attendant baggage, this case presents us with a valid contract for the sale of land made between the plaintiff and the conservator for the defendant ward. The defendant ward does not challenge either the validity of the contract or the validity of the license to sell granted to the conservator, but seeks reversal based on her lack of knowledge of the contract. The majority conclude correctly that there is no merit to this argument because lack of knowledge has not been established. On the record before us, specific performance was appropriate.

The majority take their analysis a step further. They unnecessarily and, I believe, incorrectly interpret the provisions of the guardian and conservator statute, RSA chapter 464-A. Because the majority dispose of the case on the basis of the validity of the

466

contract, I see no need for the court to engage in this analysis and to consider issues not determinative of the result.