Merrimack County Probate Court
No. 89-526

## *In re* ESTATE OF RICHARD S. ROLFE

November 4, 1992

*Hampe and McNicholas*, of Concord (*Richard A. Hampe* on the brief and orally), for the heirs.

*Upton, Sanders & Smith*, of Concord (*Frederic K. Upton* and *Gilbert Upton* on the brief, and *Gilbert Upton* orally) for First Capital Bank and Frederic K. Upton.

*John P. Arnold*, attorney general (*William B. Cullimore*, Director of Charitable Trusts, on the brief), by brief, as *amicus curiae*.

*John S. Holland*, of Manchester, by brief, as *amicus curiae*.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Robert A. Raulerson & a.* on the brief), by brief, as *amicus curiae*.

*Devine, Millimet & Branch P.A.*, of Manchester (*Cynthia J. Larose* on the brief), by brief for the New Hampshire Bankers Association, as *amicus curiae*.

*Nighswander, Martin & Mitchell P.A.*, of Laconia (*Arthur H. Nighswander* and *Margaret A. Demos* on the brief), by brief, as *amicus curiae*.

BROCK, C.J. Sally R. Patenaude, Cynthia R. Jones and Robin R. Bagley, the daughters of the decedent and beneficiaries under the decedent's will, appeal a Merrimack County Probate Court (*Cushing*, J.) decree awarding total executor's and attorney's fees in the amount of $26,000. After much deliberation, we reverse and remand.

Richard S. Rolfe died testate on January 25, 1988, leaving the bulk of his estate to his surviving spouse and three daughters. The total estate, probate and non-probate, was valued at $1,189,270.50. Following the refusal of a non-mandatory nominated individual to serve as co-executor, First Capital Bank, in accordance with the will, was named sole executor of the estate. The bank, in turn, named Richard Edmunds as the trust officer. The decedent's long-time attorney, Frederic K. Upton, Esq., was hired by the executor to render services for the estate.

The decedent's affairs were in "perfect order." All his land and possessions that he had wanted to liquidate had been sold, and he had placed the bulk of his assets in a custodial account at First Capital. By virtue of the custodial account, the bank managed Rolfe's assets and paid his bills. There were no complex issues that had to be handled by either the bank or the attorney.

Aware of the potential high cost of fees for closing out an estate, the daughters expressed their concerns to both the executor and the attorney, and attempted to obtain an estimate of the costs soon after their father's death. In lieu of an actual estimate, the daughters were given a copy of the probate fee guidelines, which base the compensation of the executor and the attorney upon the value of the estate, and were told that the fees would be set by the court.

Upon examining the fee guidelines, and calculating that the costs could be in excess of $30,000, Cynthia Jones formally requested de-

tailed information about the executor's and attorney's fees which would be charged to the estate, but to no avail. Following additional inquiries by the daughters, the executor informed them that it was premature to set the fees because it was unknown "exactly how much work [would be] involved to complete administration of the estate." Finally, when pressed by one of the daughters, the executor agreed that the fees could be based on the work done, rather than having the court establish the proper award.

Between the time of Rolfe's death and May 1988, several inquiries were made to ascertain a "ballpark" estimate of the fees, but no actual figures were ever discussed. Then, in a letter to Cynthia Jones dated May 27, 1988, the trust officer indicated that because the decedent was a friend of Attorney Upton, "we hope to make [the daughters] happy." According to the testimony of Sally Patenaude, this assured them that the fees would be kept down, and they decided against taking any action to have the executor changed. Unbeknownst to the daughters, however, the executor had sent a letter to Attorney Upton just the week before stating that he was sure that the bank would be seeking the maximum amount allowable under the guidelines.

Following the filing of the first account, the executor and attorney sought fees of $17,000 and $13,000 respectively. This figure was unacceptable to the daughters. After some discussion, both the executor and the attorney offered to reduce their fees by a total of $7,000, but this was still in excess of the $10,000 figure the daughters thought was sufficient. The daughters challenged the fees in probate court.

The probate court found:

> "After hearing held on the third day of October A.D. 1989 and upon consideration of the Value of the assets of this estate, the nature of the assets, the amount of work done by the executor and the attorney for the estate, together with their expert qualifications, the risks involved in handling this estate and all the evidence, the Court finds executor's fees and attorney fees in the total amount of twenty-six thousand dollars ($26,000) to be reasonable and hereby approves said sum for payment from the assets of this estate."

The daughters appealed to this court. After briefing and argument, we ordered supplemental briefing and reargument on the issue of "what standards should be applicable to the determination by the probate court of reasonable compensation for fiduciaries and their attorneys." We invited *amicus curiae* briefs from the legal and banking communities and other interested parties.

The daughters argue that the primary focus in determining reasonable compensation for the executor and attorney should be on hours expended. They further contend that the probate court abused its discretion in awarding $26,000 in fees and that the probate court's consideration of the fee guidelines was inappropriate. The estate's executor and attorney, on the other hand, contend that undue consideration of time records would lead to unjust results for the more experienced and efficient worker; thus, a variety of factors should be considered, including the size of the estate.

Prior to discussing what standard should be used in determining the fees, we first address the issue of the fee guidelines. The fee guidelines, which are set out in C. DE GRANDPRE ET AL., 10 NEW HAMPSHIRE PRACTICE, PROBATE LAW AND PROCEDURE § 306, at 106 (1990), were first adopted by the probate courts in 1973. Under the guidelines, the total fees for the executor and attorney are calculated based on the value of the estate.

Much to our concern, these guidelines, which we have never formally approved, now appear to be the cornerstone of all estate executor and attorney fee valuations. The potential problems with such valuations are many and may manifest themselves in numerous ways. For example, although the guidelines allegedly establish the maximum fee allowed, fiduciaries are naturally predisposed to seek the maximum, thereby tending to make the maximum fee under the guidelines actually the average fee for settling an estate. This is especially true in light of the fact that the fiduciary can petition the court for an award above that set in the guidelines in an extraordinary case.

This manner of fee calculation also proves to be problematic when, as in this case, the attorney and executor refuse to negotiate a fee, but rather rely on the courts to set the fee. The executor and attorney may then set their fee just slightly below the fee guideline maximum with the implication that, because it is within the fee guidelines, it is *per se* reasonable. In addition, because the guidelines lump executor's and attorney's fees together there is no individual accountability for work performed. Finally, we note that the fee guidelines, at the time of their approval by the probate courts, were never submitted to this court for approval as required by RSA 547:33. Without ruling on the legality of the guidelines and their past use, we now expressly disapprove of the use of the probate court fee guidelines for establishing the reasonableness of executor's and attorney's fees in estate cases.

We now turn to what standards are to be applied by the court when determining reasonable compensation for fiduciaries and attorneys. Initially, we note that the probate court did not separate the fees awarded to the executor from those awarded to the attorney. A general award was made, with no separate findings of fact regarding the work attributable to either the executor or the attorney. In this case, the attorney and executor agreed on how they would split the total award. However, because the standards to be applied to executors and attorneys, as well as the work performed by each, differ, the probate court must make separate findings and determine the fees separately.

This court has long held that an executor is entitled to a "commission." *McInnes v. Goldthwaite*, 94 N.H. 331, 337, 52 A.2d 795, 800 (1947); *Lucy v. Lucy*, 55 N.H. 9, 11 (1874); *Gordon v. West*, 8 N.H. 444, 455 (1837). In *Lucy*, we held that a reasonable commission for the settlement of an "ordinary" estate was two and one-half percent of the money "collected and accounted for." *Lucy*, 55 N.H. at 10–11; *see Gordon*, 8 N.H. at 455. From that starting point, we then examined the complexity of the estate and the executor's responsibilities in light of the services rendered, with "the amount dependent upon the labor, risk, responsibility and trouble of each particular case." *McInnes*, 94 N.H. at 337, 52 A.2d at 800; *see Lucy*, 55 N.H. at 10–11 (determining the amount based on "the time, care, risk, and responsibility" involved in administrating an estate).

Although we approve of the subsequent analysis adopted in these cases, we no longer endorse the two and one-half percent starting point. By considering the added work, responsibility and risk involved with larger estates, the probate court will adequately compensate executors of larger estates; it is not necessary to base the fees solely on the value of the estate.

As a result, the probate court must consider the above-referenced *McInnes* factors and their application in each case. We realize that this will undoubtedly increase the workload of the probate court. However, in our opinion, it is fundamentally unfair to the heirs and beneficiaries to require them to contest the requested executor's fees in order to obtain court determination of their reasonableness. The court's role is not merely to "rubber stamp" the requested fees, but rather to exercise its discretion in each case to determine what fees are reasonable. Accordingly, the size of the estate is but one factor to be considered, with the final executor's fee determination being based on the actual work performed and the concomitant articulable risks and responsibilities in a particular case.

While we acknowledge that detailed time records may be bothersome to keep, *see Gordon*, 8 N.H. at 451, it is strongly advised that fiduciaries keep a record of the time expended and work performed on the estate in order to aid the probate court in its determination of the appropriate fee. This does not mean that the court must base its ruling solely on the time records submitted. Rather, the goal is to give the probate court a clearer picture of the time and nature of the work involved instead of just a bottom line statement of the size of the estate.

As with executor's fees, the reasonableness of attorney's fees is based on an examination of a variety of factors. *Couture v. Mammoth Groceries, Inc.*, 117 N.H. 294, 296, 371 A.2d 1184, 1186 (1977); *In re Bergeron Estate*, 117 N.H. 963, 967, 380 A.2d 678, 681 (1977). In *Couture*, we relied on Disciplinary Rule 2-106(B) in determining the reasonableness of an attorney's fee. *Couture*, 117 N.H. at 296, 371 A.2d at 1186. The same factors used to determine "reasonable fees" under Disciplinary Rule 2-106(B) are embodied in Rule 1.5(a) of the New Hampshire Code of Professional Responsibility. Rule 1.5(a) provides a non-exclusive list of factors:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) the fee customarily charged in the locality for similar legal services.

(4) the amount involved and the results obtained.

(5) the time limitations imposed by the client or by the circumstances.

(6) the nature and length of the professional relationship with the client.

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."

These factors, along with any other appropriate circumstances, must be considered by the probate court in its determination of the appropriate fee to be awarded the attorney. *See Cheshire Toyota/Volvo, Inc. v. O'Sullivan*, 132 N.H. 168, 170–71, 562 A.2d 788, 790 (1989).

█ As in most matters of billing, attorneys representing estates should keep accurate detailed records to the best of their ability evidencing the work performed and the time expended. The court is then reasonably informed and may properly exercise its discretion to establish the fees to be awarded. Accordingly, we remand for a determination of the appropriate fees to be awarded the executor and the attorney in this case.

Lastly, we address a point of great concern: the fact that the daughters' requests for information concerning the terms of the fiduciary's and attorney's representation of the estate were not responded to in a direct manner. The better practice is for executors, attorneys, and those having an interest in estates, at the inception of their relationship, to openly discuss the options and terms for payment of services to be rendered the estate and attempt to reach a fee agreement. Although such an agreement is not binding on the probate court, it is certainly an important factor to be considered when determining the final fee. *See* PROB. CT. R. 36.

Due to the breadth of our order of June 27, 1990, inviting *amici curiae*, the New Hampshire Bankers Association filed a brief defending the guidelines promulgated by a resolution of a special committee of the probate courts on November 17, 1980, material to the fees of trustees in probate trusts. We do not undertake, at this time, to prescribe an appropriate standard for the determination of those fees.

*Reversed and remanded.*

All concurred.