123 Cal.App.2d 787 (1954)
Estate of DANIEL McSWEENEY, Deceased. EUGENE B. SWEENEY et al., Appellants,
v.
ALEXANDER J. WELTE, Individually and as Executor, etc. et al., Respondents.
Civ. No. 15825. 
California Court of Appeals. First Dist., Div. One. 
Mar. 15, 1954.
 Edwin H. Williams and Donald B. Richardson for Appellants.
 Dolwig, Davis & Miller for Respondents.
 PETERS, P. J.
 Daniel McSweeney died on February 22, 1946, leaving an estate valued at $53,197.92. His will disposed of only a portion of his property. In April of 1946, Alexander and Eleanor Welte, husband and wife, were appointed joint executors of the estate, and have so served ever since. On May 29, 1950, a decree of partial distribution was rendered, ordering distribution of property valued at $36,446.97, and awarding the attorneys for the executors $8,175 as fees for extraordinary services. The order allowing these fees was reversed (Estate of McSweeney, 107 Cal.App.2d 140 [236 P.2d 846]). Two other appeals taken during the course of probate are not here relevant. They are to be found in 87 Cal.App.2d 888 [198 P.2d 351], and in the same volume at page 897 [198 P.2d 357].
 The petition for final distribution was filed September 22, 1952. The heirs at law of the deceased filed objections to *790 the petition and to the account. The probate court appointed a referee to hear the matters in controversy. The referee overruled all of the objections filed by the heirs. The probate court adopted the findings of the referee without change, and made its order settling the account, and allowing the attorneys and the executors, and their accountant, certain fees. The heirs at law appeal from this decree confirming the report of the referee and settling the account. The points raised will be considered separately.
 Did the probate court improperly allow the gross rent from the specifically devised real property to be paid to the devisees?
 [1] The referee and court found that $5,178.48 had been collected in rent on certain real property specifically devised to the executors; that $1,790.83 had been spent by the executors for repairs, improvements, taxes, insurance, and for public utilities on these properties, and that all these expenses were chargeable against the residuary estate as expenses of administration. Thus, the probate court awarded to the executors, as devisees, the gross rentals collected, without deductions. This was clearly error. (Estate of de Bernal, 165 Cal. 223 [131 P. 375, Ann.Cas. 1914D 26]; Estate of Coberly, 90 Cal.App.2d 46 [202 P.2d 306].) Respondents frankly concede that this was error, and admit that they were only entitled to the net rentals. The parties are in dispute, however, over the amount that should be deducted because of this error. It is impossible from the account to tell the precise amount that should be deducted from the gross rentals. In view of the necessity of a reversal, for this and other errors, this matter can be clarified on the retrial.
 Did the respondents waive their right to any part of the rent money?
 Appellants urge that the respondents have waived all claims to any part of the rent money, and are estopped from now claiming it, for the reason that in their petition for partial distribution filed May 29, 1950, the executors, who are also the devisees of the property involved, failed to claim the rent on this property that otherwise would have been due to them. Estate of Coberly, 90 Cal.App.2d 46 [202 P.2d 306], is cited in support of this contention. In that case the executor, who was also a specific devisee of a life interest in the realty, filed an accounting and petition for partial distribution in which the rent was listed as part of the residue. Then on *791 final distribution the executor, as devisee, claimed all of the rent money. The court properly held that there had been a waiver of all rent accruing up until the time of partial distribution, but that there was no waiver as to rent subsequently accruing. The rule of that case is not here applicable. [2] Here the rent was not mentioned at all in the petition for partial distribution. The rent was not listed for distribution until the final accounting. The basis of the Coberly rule is that the decree of partial distribution had finally allocated the accrued rents to the residue. Here there is no basis for a waiver. No distribution of the rents was made until final distribution. The executors, as devisees, are entitled to the net rentals.
 Should the executors have been charged interest on certain sums of money?
 The final account listed $11,383.34 for certain expenditures claimed to have been expended for estate purposes. The referee and probate court found that these items were not chargeable against the estate and should be refunded to the estate. All the parties to this appeal accept that finding. But the referee and probate court also found that on other claims of the executors $10,409.10 was due to them by way of distribution, and that this should be offset against the $11,383.34, leaving $974.24 to be paid to the estate by the executors.
 The $11,383.34 includes $8,175 allowed by the probate court at the time of the hearing on the petition for partial distribution for attorneys' fees for extraordinary services. [fn. *] This allowance was reversed on appeal on the ground that the services rendered were in fact rendered for respondents as devisees and not for them in their representative capacities, and so, of course, they were not a proper charge against the estate. (Estate of McSweeney, 107 Cal.App.2d 140 [236 P.2d 846].) The fee was paid over by respondents after the probate court had made its order but while the propriety of that order was being tested by the appeal. It was never repaid to the estate after the reversal. Appellants, citing section 2262 of the Civil Code, and Estate of Piercy, 168 Cal. 755 [145 P. 91]; Estate of Guglielmi, 138 Cal.App. 80 [31 P.2d 1078]; Estate of McCabe, 98 Cal.App.2d 503 [220 P.2d 614]; and Estate of Prior, 111 Cal.App.2d 464 [244 P.2d 697], *792 contend that the executors should be charged compound interest on the $11,383.34 from the date each portion of it was improperly expended.
 Respondents contend that the above authorities are not here applicable because, although they improperly expended $11,383.34, they had other legitimate claims against the estate in the amount of $10,409.10. In addition, the executors were entitled to sums for ordinary and extraordinary services which, when added to the $10,409.10, exceeds the $11,383.34 improperly expended. Therefore, say respondents, the residuary heirs were not injured because the executors could have properly paid themselves sums in excess of those improperly expended. It is contended that to compel respondents, as executors, to pay interest on moneys in which the heirs had no lawful interest, when the executors were entitled to sums in excess of those unlawfully expended, would be to make the executors pay interest to themselves on money they legally owned.
 [3] These arguments are unsound. When an executor is also a devisee the law necessarily recognizes as distinct his individual and official capacities. So far as sums due him as devisee are concerned, he is in no better position than any other devisee. He is not entitled to use such sums until they are distributed to him in the manner provided by law. [4] Of course, he cannot use funds of the estate available to him in his official capacity for his individual needs. If he does, under the authorities above cited, he is liable for the moneys thus used, and for interest thereon. If respondents' argument were correct it would give an executor who is a devisee an unfair advantage over other devisees. He would be entitled, before distribution, to use the money of the estate for his own benefit without liability for interest, a privilege denied other devisees. It is clear that the probate court should have required that the executors pay interest on the amounts unlawfully expended by them. Such interest payments, obviously, will become a part of the general assets of the estate. Thus, the executors will not be paying interest to themselves on money owing to themselves.
 The problem as to whether this interest should be simple or compound is a matter for the trial court to determine under the facts on the retrial. All of the cases cited by appellants where compound interest was charged involved strict trustees, and involved deliberate misappropriations by the trustees. Here it would appear that the unlawful expenditures were *793 negligent rather than willful. [5] It will be noted that section 2262 of the Civil Code provides as to trustees who improperly fail to invest money, that compound interest shall be charged if the failure is willful, but that simple interest should be charged if the failure is found to be negligent. The same rule should be here applicable. This is a question of fact. On the retrial the probate court can ascertain the true facts and make appropriate findings.
 [6] Appellants also contend that respondents should be compelled to pay simple interest on cash belonging to the estate deposited by the executors in a noninterest paying commercial account and kept there by them for over six years, claiming that this was negligence under section 2262 of the Civil Code. Most of the period involved is before the date of the decree of partial distribution, because on that date most of the cash was distributed.
 The executor, in many respects, has the same duties and responsibilities as a trustee, but in some respects they differ. In Estate of Smith, 112 Cal.App. 680 [297 P. 927], the court pointed out that, unlike a strict trustee, an executor has no statutory duty to invest money belonging to the estate, it being his primary duty to preserve and protect the assets until distribution. The court recognized the rule that an executor should deposit funds, held by him for long periods, in a savings bank in order to earn interest. But the rule is permissive and not mandatory. Inasmuch as it is the primary duty of an executor to protect rather than to invest the funds in the estate, and in view of the facts here involved, it is our opinion that the probate court acted within its discretion in refusing to assess interest on these funds.
 Did the executors properly account for the Loretta Koen property?
 The dispute here revolves around a parcel of real property referred to as the Loretta Koen property. From the inception of the probate until 1950 the executors treated this property as if it were estate property. The inventory filed in 1946 listed it as such with an appraised value of $2,500, and thereafter the executors paid the taxes, collected the rents, etc. In 1950, shortly after the appellants here had filed their objections to the petition for partial distribution, Loretta Koen brought an action to quiet her title to this property. Judgment was entered in that action quieting her title against the estate, which judgment has become final. That judgment *794 was admitted into evidence in the instant case. Appellants sought to attack the accounting insofar as it did not list this property as property of the estate. The referee and the probate court were of the opinion that the judgment in the quiet title action was conclusive in this proceeding, that appellants were trying to attack the judgment collaterally, and were improperly attempting to try title in a probate proceeding. All evidence aimed at attacking the actions of the executors in the quiet title action was excluded. Appellants offered to prove that in the quiet title action the executors had not contested the suit but had entered into a stipulation waiving notice of trial, written findings and conclusions and notice of entry of judgment. Objections were also sustained to questions directed to respondents as to whether they knew that the deed from decedent to Loretta Koen had in fact never been delivered. Counsel for appellants offered to prove that the deed had not been delivered.
 The evidence should have been admitted. The appellants were not attacking the quiet title decree as such. [7] They were attacking the accounting proposed by the executors by trying to show that the executors had been derelict in their duty to preserve and to protect the estate by failing to defend the quiet title suit. If they can show that the estate lost property because of the derelictions of the executors, they should be permitted to do so.
 [8] The case of Jordan v. Clausen, 13 Cal.App.2d 16 [56 P.2d 240], demonstrates that, in a proper case, the heirs may go behind a judgment against the estate to show that such judgment was secured by fraud or collusion. [9] While such holding was an alternative ground of the decision, it is well settled law that "where two independent reasons are given for a decision, neither one is to be considered mere dictum, since there is no more reason for calling one ground the real basis of the decision than the other. The ruling on both grounds is the judgment of the court and each is of equal validity." (Bank of Italy v. Bentley, 217 Cal. 644, 650 [20 P.2d 940].) While that was not a proceeding in the probate court, and so does not answer the argument that such an attack is an improper attempt to try title in such court, the answer to that contention is that appellants are not attempting to try title at all but simply challenging the account. [10] Respondents, in arguing to the contrary, are in effect contending that they can default or confess judgment in an action against the estate, even though the estate *795 has a valid defense, and then set the judgment up not only in support of their accounting, but as conclusive evidence of its correctness. That is not the law. If appellants can show that, in fact, the estate had a valid defense to the quiet title action known to respondents which they failed or refused to make, they should be permitted to make such a showing. It was error to have excluded the proffered testimony.
 Was the $1,000 found in the safe deposit box property of the estate?
 After decedent's death $1,000 was found in his safe deposit box in the First National Bank of San Mateo County located in Redwood City. The executors deposited this in their names as executors. At all stages of the probate proceedings, up until the final accounting, this $1,000 was listed by the executors as an asset of the estate. Among other things, it was included in the inventory verified by the executors. The will of the decedent had left one-half of the money in two named South San Francisco banks to the executors in equal shares. There was nearly $7,000 on deposit in these two banks. But the $1,000 here involved was found in a bank located in Redwood City. Nevertheless, the executors, in the request for partial distribution, listed this money as part of the money specifically left to them to the extent of one-half, added it to the amounts found in the South San Francisco banks, and requested that one-half of the total be distributed to them in equal shares. This was erroneous because the $1,000 was clearly not part of the bequest of the South San Francisco bank accounts.
 The respondents have abandoned, quite properly, the claim that any portion of the money was included in the bequest of the South San Francisco bank accounts, but on this petition, for the first time, contended that this $1,000 had been given to Mrs. Welte as a gift by decedent prior to his death. This was accomplished by subtracting the $1,000 from the total assets available for distribution under the caption "Gift to Eleanor Welte included in inventory, now claimed by her."
 [11a] In support of the position that there had been a gift of the $1,000 to Mrs. Welte, she testified that in December, 1940, she accompanied decedent, at his request, to the Redwood City bank; that there he opened his safe deposit box and showed her his will and had her read it; that then he handed her an unsealed envelope and asked her to open it, which she did, and found therein $1,000; that decedent told *796 her it was hers; that she told him that she did not need it at that time; that he replied: "Well, I want you to know that it is here and it is yours"; that she replied that she was negotiating for a job and if it was secured she would not need the money; that he replied: "Well, it's still yours. If you don't have any occasion to use it save it for Buddy's [her son's] education"; that the envelope was then sealed and put back in the safe deposit box. The envelope, after decedent's death, was found in that box and then bore the caption, in decedent's handwriting "Mrs. Eleanor C. Ryan [Mrs. Welte's former name] from Dan McSweeney." There was also admitted a photostat of a safe deposit card for this box, undated, bearing the names of decedent and Mrs. Welte. There was no evidence that Mrs. Welte ever had any access to this box, or the right of access to it.
 Mrs. Welte filed no claim against the estate for this sum but, to the contrary, listed the money as an asset of the estate. Respondents argue that Mrs. Welte at all times believed that the money was hers, but, out of an abundance of caution, and on advice of counsel, listed it as an estate asset. The referee and court found an executed gift.
 Not only would there seem to be some basis for appellants' contention that there exists a waiver and estoppel as a result of the listing of the property as an asset of the estate until the petition for final distribution, but it is equally clear that the evidence does not support the finding of an executed gift. The evidence does not show a completed delivery. [12] It is the law that when the claim of gift is not asserted until after the death of the claimed donor, [fn. *] the burden is on the donee to show by clear and satisfactory evidence every element necessary to constitute a gift. (Denigan v. Hibernia etc. Society, 127 Cal. 137 [59 P. 389]; Mutual Benefit Life Ins. Co. v. Clark, 81 Cal.App. 546 [254 P. 306].) [13] It is well settled that in such cases "it is necessary that there shall be an immediate surrender of the article which is the subject of the gift, together with all dominion and control over it. If dominion and control over the gift is retained by the donor until his death, it becomes merely an unexecuted and unenforceable promise to make a future gift." (Morehead v. Turner, 41 Cal.App.2d 414, 422 [106 P.2d 969]; *797 see also Estate of Alberts, 38 Cal.App.2d 42, 47 [100 P.2d 538].) [11b] In the instant case the evidence does not meet these tests. The $1,000 should, under the evidence, have been listed as an asset of the estate.
 Should the costs of appeal in Estate of McSweeney, 107 Cal.App.2d 140 [236 P.2d 846], have been charged to the respondents individually?
 [14] The probate court allowed the costs in that appeal as a charge against the estate. Appellants urge that such costs should have been borne by respondents individually and not allowed as an estate charge.
 In the case in question the probate court had approved an accounting and ordered a partial distribution. Included therein was an award of $8,175 to counsel for the executors for extraordinary services. It was this accounting and decree of partial distribution that the executors were seeking to uphold on that appeal. It was held that the award of attorneys' fees should be reversed because most of the services for which they were awarded were rendered to respondents in their individual and not their representative capacities. The order for fees was reversed. Respondents defended that appeal as executors. Appellants argue that as prevailing parties on that appeal they were entitled to their costs on appeal, and that if such costs are charged against the estate, as was here done, they will in fact be borne by appellants, who there prevailed, rather than by respondents.
 The awarding of the costs against the estate was within the discretion of the lower court. Rule 26 of the Rules on Appeal expressly provides: "In probate cases, in the absence of an express direction for costs by the reviewing court [there was no such direction here] costs on appeal shall be awarded to the prevailing party, but the superior court shall decide against whom such award shall be made." It was not an abuse of this power to charge such costs against the estate. Since respondents were acting as executors in defending that appeal, the probate court was authorized to allow costs of that appeal as a charge against the estate.
 Were the fees allowed the accountant, the attorneys, or the executors excessive?
 [15] The court allowed the accountant $450 for his services to the estate. The appellants argue that the services rendered by him were unnecessary and unproductive, and *798 therefore that the allowance is excessive. It is argued that most of the work had been included in prior accounts rendered before this account was hired. These were fact matters. It appears that the accountant's report covered the years 1946 to 1952, and this involved many transactions. As a witness the accountant displayed a complete knowledge of the financial affairs of the estate, which indicated careful preparation. We cannot hold, as a matter of law, that the $450 award was excessive. It was properly allowed.
 [16] The court allowed $750 as a fee to the attorneys for extraordinary services. Most of these services were rendered in connection with the sales of three parcels of real property belonging to the estate. There is no dispute but that these services were rendered, and that the attorneys were entitled to some amount for these services in addition to their regular fee. While the amount of extra work here shown was not impressive, the amount of the allowance for such services was within the discretion of the probate court. (Prob. Code, 910, 911; Estate of Keith, 16 Cal.App.2d 67 [60 P.2d 171]; see cases collected 11B Cal.Jur. p. 499, 1051.) We cannot hold that such discretion was here abused.
 [17] The lower court also allowed the executors $750 for extraordinary services. These too included services in connection with the three sales mentioned above, and some other claimed services, some of which were ordinary and some extraordinary in character. It is not necessary to enumerate them. The services were rendered the estate. The amount of the allowance to be made for them was in the discretion of the probate court. We cannot say that such discretion was here abused.
 The decree appealed from is reversed, with directions to the lower court to reconsider those matters held in this opinion to have been erroneously decided, and to then enter a new decree in conformity with the views herein expressed.
 Bray, J., and Wood (Fred B.), J., concurred.
NOTES
[fn. *] *. The balance consisted of inheritance taxes and litigation expenses paid for with estate funds but not chargeable against the estate.
[fn. *] *. Here there is not only no evidence that the claim of gift was made prior to death, but all during probate, up until 1952 when the petition for partial distribution was filed, it was asserted under oath by the alleged donee that the $1,000 belonged to the estate.