[Civ. No. 35319. Second Dist., Div. Three. June 30, 1970.]

THOMAS C. LYNCH, as Attorney General, etc.,
Plaintiff and Appellant, v.
JOHN M. REDFIELD FOUNDATION et al.,
Defendants and Respondents.

**COUNSEL**

Thomas C. Lynch, Attorney General, and Carl Boronkay, Deputy Attorney General, for Plaintiff and Appellant.

Morris W. Young, Rogan & Radding and Richard R. Rogan for Defendants and Respondents.

## OPINION

**SCHWEITZER, Acting P. J.**—Pursuant to statutory supervisory authority over nonprofit corporations (Corp. Code, § 10207), the Attorney General filed this action against defendant Foundation and its three directors, Morris W. Young, Anne F. Redfield Heaver, and John M. Redfield, Jr., alleging mismanagement by the directors in permitting cash to accumulate in a non-interest-bearing bank account for approximately five years, in failing to manage the assets of the Foundation in a businesslike manner, and in in failing to carry out the Foundation's charitable purposes for said period. The Attorney General asked the court to remove the directors and surcharge them for the earnings that should have been obtained from the uninvested money. Defendants Young and Redfield filed a cross-complaint against defendant Heaver, alleging that if there was a breach of trust, it was caused by the conduct of the defendant Heaver, that if they be surcharged, they have judgment against Heaver for the amount of the surcharge.

The trial court denied all relief requested by plaintiff except to order the removal of Heaver as director. In view of this judgment, no findings of fact or conclusions of law were made on the issues raised by the cross-complaint. The Attorney General appeals from the judgment and presents only one question, that the trial court erred in not surcharging the directors for loss of income as a result of their retention of accumulated cash in a non-interest-bearing account.

### Facts

There is no disagreement as to the essential facts. The Foundation was organized in 1940 for religious, charitable, scientific, literary and/or educational purposes. From its inception it arranged that dividends earned on securities be sent directly to the Security First National Bank for deposit in the Foundation's checking account. The money was then distributed periodically by the directors to various donees. In the late 1950s serious disagreements arose between the directors as to donees and as to management. Director Heaver refused to attend meetings called by the other two directors (Corp. Code § 812), refused to recognize them as directors, and without notice to them, called a directors' meeting at which another person was "elected" as a director and a resolution was "adopted" requesting the bank not to recognize any action by the other two directors. A stalemate ensued. Twice Heaver filed lawsuits seeking the removal of Young and Redfield. Each action was subsequently dismissed; no judicial relief was obtained.

Because of the controversies the bank notified the directors in 1961 that

it would not honor drafts on the Foundation's account without a court order unless all directors concurred in the action. The directors were unable to agree; as a result no drafts were issued. The bank continued to receive dividend income and deposited the dividends in the Foundation's checking account. The directors took no steps to have the income deposited in an interest-bearing account or to have the dividend income otherwise invested. As a result the cash balance in the non-interest-bearing commercial account increased from $4,928.47 at the close of 1961 to $47,099.64 at the close of 1966.

The complaint was filed on August 19, 1965. Heaver, the dissident director removed by the trial court, died October 16, 1969, after trial and pending this appeal. Pursuant to order of this court, her executor has been substituted as a party defendant in her place and stead.

The trial court found that "the directors of The John M. Redfield Foundation acted in good faith in all respects and specifically acted in good faith in keeping on hand funds for distribution; that the accumulation of dividends was not unreasonable"; and concluded that the directors "did not breach any duty in failing to transfer dividends derived by the John M. Redfield Foundation to an interest-bearing account, or to otherwise invest said dividends from the close of 1961 to Spring, 1967, or for any period therein"; and that "[t]he action of the directors in the management of the affairs of the Foundation was completely in good faith, reasonable and prudent."

### Contentions

The Attorney General contends (1) that it is a breach of duty as a matter of law for directors of a charitable corporation to accumulate and retain money in a non-interest-bearing account for a period of five years; (2) that the evidence does not support the trial court's findings of fact, conclusions of law, and judgment; and (3) that the directors should be surcharged for the loss of income at the rate of 7 percent per annum.

Defendants contend that the question as to whether they breached their duty was one of fact, or mixed law and fact, that the evidence was sufficient to sustain the trial court's findings of fact, conclusions of law and judgment, and that therefore its determination should not be disturbed on appeal.

As heretofore stated, the facts are undisputed. Therefore the rule is that " 'the ultimate conclusion to be drawn from undisputed facts is a question of law for an appellate court [citations].' " (*Morrison* v. *State Board of Education,* 1 Cal.3d 214, 238 [82 Cal.Rptr. 175, 461 P.2d 175].)

## Duty to Invest Funds

■ Assets of a charitable corporation are impressed with a trust. (*In re Los Angeles County Pioneer Soc.*, 40 Cal.2d 852, 860 [257 P.2d 1]; *Pacific Home* v. *County of Los Angeles*, 41 Cal.2d 844, 852 [264 P.2d 539]; *Estate of Clippinger*, 75 Cal.App.2d 426, 433 [171 P.2d 567].) Members of the board of directors of such corporation are essentially trustees. (*Holt* v. *College of Osteopathic Physicians & Surgeons*, 61 Cal.2d 750, 756-757 [40 Cal.Rptr. 244, 394 P.2d 932].) ■ "In making investments of trust funds the trustee of a charitable trust is under a duty similar to that of the trustee of a private trust." (2 Rest. 2d Trusts, § 389, p. 277; see also 4 Scott on Trusts (3d ed. 1967) § 386, p. 2994.)

■ "From the standpoint of sound legal practice the only technique to be employed by the directors of a charitable corporation in California in the performance of their duties is that of compliance with strict trust principles. It should be noted that, while directors of charitable corporations are exempt from personal liability for the debts, liabilities or obligations of the corporation, they are not immune from personal liability for their own fraud, bad faith, negligent acts or other breaches of duty." (26 So.Cal. L.Rev. 80, 85, cited in *Holt* v. *College of Osteopathic Physicians & Surgeons, supra,* 61 Cal.2d at p. 757.)

■ Ordinarily it is the duty of the trustee to invest funds so that they will be productive of income. The trustee can properly take a reasonable amount of time in looking out for proper trust investments, and is not liable for failure to make the property productive during such time. If, however, he delays for an unreasonable length of time before making investments, he commits a breach of trust. Whether his delay in making investments is unreasonable depends upon all the circumstances." (2 Scott, *supra,* § 181, pp. 1463-1464; see also 1 Rest.2d Trusts, § 181, p. 391.)

"What is a reasonable time for leaving funds on deposit depends upon the circumstances, including the amount on deposit and the possibility of finding proper investments. It is not improper to keep continuously on deposit such an amount as is reasonably necessary to pay the running expenses of the trust." (2 Scott, *supra,* § 180.3, p. 1457.)

In determining whether there has been a breach of duty, the standard of care is set forth in section 2261, subdivision 1, of the Civil Code, commonly referred to as the prudent man investment rule: "In investing, reinvesting, purchasing, acquiring, exchanging, selling and managing property for the benefit of another, a trustee shall exercise the judgment and care, under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in

regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of their capital. . . ."

In *Higgins* v. *City of Santa Monica,* 62 Cal.2d 24 [41 Cal.Rptr. 9, 396 P.2d 41], even though the Supreme Court found that the rule on investment was inapplicable because the purpose of the trust was to preserve property for public enjoyment rather than to generate income, the court stated at page 29: "The usual rule is that a trustee is bound to use diligence to make a trust productive. What that means, generally, is that 'it is the duty of the trustee to invest trust funds so that they will be productive of income.' [Citation.])"

In *Estate of McCabe,* 98 Cal.App.2d 503 [220 P.2d 614], the court said at page 508: "Mrs. McCabe violated her duties as trustee, statutory and otherwise, by mingling these funds with her own, *by omitting to invest them so as to provide an income,* and by negligently failing to keep any records. . . ." (Italics added.)

In *Estate of Whitney,* 78 Cal.App. 638 [248 P.754], the court upheld the trial court's ruling in not surcharging the trustees for failing to invest cash held during a short period, but added on page 645: "It is, however, of the most vital importance that trustees be held to a strict and rigid accountability. They must exercise, in the execution of the trust, the degree of care and diligence which a man of ordinary prudence would exercise in the management of his own affairs. If, then, in carrying out the manifest intention of the testator, delay in distribution occurs for any reason, and sums accumulate, that simple business prudence would dictate should be invested, and such sums are not invested or placed at interest, such omission should and will subject trustees to the payment of the interest they ought to have received. If they become short of this duty they will be held to a strict personal accountability for any losses which may result from such omissions. And the fact that they neither made nor intended to make any personal gain from their omission would not exonerate them from liability."

Turning to the instant case, our question is whether defendant directors, under the circumstances existent during the years 1961 through 1966, complied with the prudent man investment rule (Civ. Code, § 2261, subd. 1) by allowing trust income to accumulate in a non-interest-bearing account for approximately five years. In deciding this question we note that cases involving the obligations and duties of executors and administrators furnish little assistance; unlike a trustee who is charged with a duty to invest, the executor's primary obligation is to safeguard assets. (*Estate of McSweeney,* 123 Cal.App.2d 787, 793 [268 P.2d 107]; *Estate of Smith,* 112 Cal.App. 680, 685 [297 P. 927].) We also note that although most of

the authorities cited with respect to a trustee's duty to invest pertain to the investment of principal, we see no reason why the principle is not equally applicable to the duty to invest accumulated income; no authority has been found that makes or discusses such a distinction. (See *Fidelity Union Trust Co.* v. *McGraw* (1946) 138 N.J. Eq. 415 [48 A.2d 279, 284].)

The trial court held that under the circumstances five years was not an unreasonable length of time to hold the income in a non-interest-bearing account. We will review the few cases that have considered this question.

In *Estate of Prior*, 111 Cal.App.2d 464 [244 P.2d 697], the executor-trustee was charged with 7 percent interest (4 percent against him as executor, 3 percent against him as trustee) from one year after death of testator for failing to invest a $5,000 bequest to himself as trustee.

In *McInnes* v. *Goldthwaite* (1947) 94 N.H. 331 [52 A.2d 795, 799, 171 A.L.R. 1414], the executor failed to distribute assets to a testamentary trustee for in excess of 12 years; as a result he was held to the duties of a trustee. Over a 10-year period he had balances of uninvested funds averaging approximately $4,100 each month; the average was raised by the monthly balances of $7,000 and $10,000 during the last two years of his administration. In reversing an order of surcharge, the court pointed out that a checking account was necessary to meet contingent expenses, that the large balances for the last two years were explained by the approaching termination of the executorship, and that the balances for the prior years were not so unreasonably large as to constitute neglect.

In *In re D'Espinay-Durtal's Will* (1957) 4 App.Div.2d 141 [163 N.Y.S.2d 309], an ancillary executor was surcharged for the retention in a non-interest-bearing account in excess of $100,000 in cash for a four-year period. The executor offered no evidence of circumstances to justify his act.

The court stated in *Gilbert* v. *Wise* (1948) 192 Misc. 101 [78 N.Y.S.2d 533, 540]: "The trustee's accounts reveal that he has held substantial sums uninvested for more than a year in each of the trusts. Although he has sought to justify his retention of cash to maintain liquidity for promising investments, it was possible to maintain liquidity by investment in United States Government notes. . . ." The trustee was surcharged at the interest rate of such notes.

In *In re Drake's Will* (Sur. 1954) 132 N.Y.S.2d 259, 261, the estate of a deceased trustee was surcharged "at the stipulated savings bank rate of interest" on cash held for approximately five years which "she maintained on deposit during the entire accounting period in a non-interest-bearing account in a commercial bank."

In *Wight* v. *Lee* (1924) 101 Conn. 401 [126 A. 218], approximately $3,000 was held by a trustee's attorney in a non-interest-bearing account for a five-year period. A surcharge of interest was upheld.

In the instant case the directors apparently concede that the retention of income in a non-interest bearing account for a five-year period would normally not meet the standards of the prudent man investment rule (Civ. Code, § 2261, subd. 1), but argue that under the circumstances they should be excused. They mention the cause, a dispute among themselves; the effect, the "blocking" of the bank account; the remedy, a costly lawsuit; the fact that they served without compensation; and the fact that during the period of inaction, the corpus gained approximately 100 percent in value. Two of the directors strenuously argue that if there be a finding of negligence which caused a loss, they be exonerated because they acted in good faith, and that the fault rested exclusively with director Heaver.

We are satisfied from the authorities heretofore cited that the directors failed to meet the standards of the prudent man investment rule (Civ. Code, § 2261, subd. 1), and that none of the circumstances exonerate them from liability. The "blocking" of the bank account and the possibility of litigation were merely results of their dispute. Thus the primary cause of the loss of income was fault on the part of one or more directors. We cannot blame the bank for its refusal to honor drafts. Its refusal is no excuse for defendants' inaction. The possibility of a costly lawsuit is no excuse since it also would have been the result of the misconduct of the directors. Furthermore, with respect to litigation we question that it necessarily would have been costly, involved or lengthy. It is reasonable to assume that any court, upon application, in either direct or ancillary proceedings, would summarily have made an order for the transfer of the income to an interest-bearing account.

By pointing out that they served without compensation, defendant directors imply that such fact might subject them to a lesser fiduciary obligation than a compensated trustee. No authority has been cited and we have found none. We see no basis for such conclusion.

The increase in value of the corpus is no excuse for negligence in failing to invest trust funds. Presumably the corpus would have had the same appreciation in value had the directors properly managed the trust. This argument overlooks the sole issue, the loss by the Foundation of income from the corpus. (See 3 Scott, *supra*, § 213.1, p. 1715.)

Most of the evidence at trial related to the dispute between the directors, the action of the dissident director, and the apparent good faith efforts of the other two to settle their differences and to carry out their obligations to

the Foundation and the beneficiaries. There is substantial evidence of good faith and the trial court so found. ■ But good faith is no defense in an action against trustees based on negligence. In reviewing the accounts of a trustee our Supreme Court stated in *Purdy* v. *Johnson,* 174 Cal. 521, 531 [163 P. 893]: "It is probable that upon any such settlement of the account, these trustees will be compelled to forego repayment of sums which they have properly and in good faith expended for the trust, and that they will be charged as having received money in cases where they have not, in fact, received it, and could not with reasonable diligence have received it. But, if this be the result, it will follow from the failure and neglect of the trustees to perform their duty of keeping full and accurate accounts of their transactions. *Their good faith cannot save them from the consequences of this neglect.*" (Italics added.) (See 1 Rest.2d Trusts, § 201, pp. 442-443.) This is true even though fault rests with only one trustee. Each trustee is liable for damages caused by the negligent acts of a co-trustee; liability of trustees for negligence is joint and several. (3 Scott, *supra,* § 258, p. 2208; 90 C.J.S., Trusts, § 335.) Thus, evidence of good faith on the part of some of the directors, and evidence attempting to place fault on the part of one of the directors was irrelevant and immaterial to the issues tendered by the complaint; it should have been limited to the issues raised by the cross-complaint. The findings with respect thereto were therefore improper.

■ We conclude as a matter of law under the undisputed facts of this case that the directors breached the prudent man investment rule (Civ. Code, § 2261, subd. 1) by failing to invest the income during the five-year period. As stated by the Attorney General: "[A]ll three directors in concentrating on their feud left the Foundation in a state of suspended animation for several years ignoring their obligations to carry on its charitable purposes and to manage its assets with the degree of care and diligence which a prudent man would exercise in the management of his own affairs."

### Interest

■ A trustee who negligently breaches his trust by failing to invest income within a reasonable time is liable pursuant to statute for simple interest at the rate of 7 percent per annum (Civ. Code, § 2262; see *Estate of McLellan,* 8 Cal.2d 49, 55 [63 P.2d 1120]; *Estate of McSweeney, supra,* 123 Cal.App.2d 787, 793; *Estate of Prior, supra,* 111 Cal.App.2d 464, 470-471; *Estate of McCabe, supra,* 98 Cal.App.2d 503, 505) from the date of the breach of trust.[1] (*First Nat. Bank* v. *McGuire* (7th Cir. 1950) 184 F.2d

---

[1]There is authority that the surcharge is at "the usual rate of return on trust investments, and not for interest at the legal rate" (3 Scott, *supra,* § 207.1, pp. 1677-1678), or "at the legal rate or such other rate as the court in its sound discretion may determine." (1 Rest.2d Trusts, § 207, pp. 468-470); see also, 90 C.J.S. Trusts, § 342.)

620, 628.) ■ In determining the date of breach the court must consider such factors as the purpose of the trust, the amount of money on hand and the amount deemed necessary to meet possible contingencies or emergencies (*McInnes* v. *Goldthwaite, supra,* 52 A.2d 795; *In re Drake's Will, supra,* 132 N.Y.S.2d 259) in the light of the prudent man investment rule. (Civ. Code, § 2261, subd. 1.)

The evidence is insufficient for this court to determine the date of breach of trust. The trial court is instructed to determine the date of breach of trust, and to enter judgment surcharging the directors and the executor of the deceased director's estate jointly and severally for interest at 7 percent per annum on the money it finds was available for investment on and after the date of breach of trust.

Since the trial court made no findings of fact or conclusions of law as to the issues raised by the cross-complaint and did not enter judgment thereon, those issues can be heard and determined by the trial court in conjunction with aforementioned proceedings.[2]

That portion of the judgment removing defendant Heaver as a director and refusing to remove defendants Young and Redfield as directors, is affirmed; in all other respects the judgment is reversed with directions to the trial court to take action consistent herewith. Appellant is awarded his costs on appeal.

Cobey, J., and Allport, J., concurred.

---

[2]As to the right of indemnity of trustees for damages caused by negligence of a cotrustee, see 3 Scott, *supra,* sections 258, 258.1, pages 2208-2211.