Filed 9/24/15  Estate of Coltri CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| Estate of VALERIO L. COLTRI, Deceased. | C075977 |
| TINA C. MARSHALL,<br><br>Petitioner and Respondent,<br><br>v.<br><br>VALERIO M. COLTRI,<br><br>Objector and Appellant. | (Super. Ct. No. PR12956) |

Valerio L. Coltri died intestate on December 21, 1991, and was survived by his three children, Dario, Valerio M. (known as Joey), and Tina.[1]  Dario was appointed administrator of the estate in 1992.  The major assets of the estate were over 760 acres of

---

[1]  For convenience and to avoid confusion, we refer to the children by their first names or, in the case of Joey, his nickname.

1

timber property.  Although all the property was heavily encumbered with deeds of trust and back taxes, the estate inventory did not show *any* encumbrances and the property was valued without accounting for the substantial debts.  Dario did not distribute the estate assets, but instead attempted to preserve and manage them himself, ultimately selling much of the land to meet expenses.  For many years, Dario did not communicate with his sister Tina, failed to file an accounting, failed to cooperate with or contact his attorney, and evaded service of citations to appear in court.  His powers as administrator were suspended in 1998, but he continued to control--and sell--the property, *without* notice to Tina.

Dario finally filed an accounting of the estate in 2011.  Tina filed objections, essentially claiming Dario had failed to account for estate assets.  Before the conclusion of the first trial, Dario committed suicide.  A second trial occurred almost a year and a half later.  The probate court found Dario breached his fiduciary duty to the estate in numerous ways.  The court surcharged Dario's estate $260,059.45, an amount in excess of his share of his father's (diminished) estate.  The court ordered the remaining property in the estate (four parcels of real property in Nevada County) distributed two parcels each to Tina and Joey.

Joey, as Dario's successor administrator, appeals.  He contends Dario did not breach any fiduciary duty that caused damage or loss to the estate and the court abused its discretion in surcharging him.  We find the evidence supports the probate court's view that Dario ran the estate as a timber property maintenance operation to the exclusion of Tina's interest.  We find the record supports all of the surcharges, except $40,000 for the loss of value of the Nevada County property.  We will modify the judgment accordingly, and affirm the modified judgment.[2]

---

[2] Presiding Justice Vance W. Raye and Associate Justices Ronald B. Robie and Elena J. Duarte heard oral argument in this case on July 21, 2015.  Shortly thereafter, Justice

2

## BACKGROUND

*1991-1996: Dario Appointed Administrator and Filed Inventories*

Valerio L. Coltri died intestate on December 21, 1991, and his son Dario was appointed administrator of the estate in 1992, with full authority to administer the estate under the Independent Administration of Estates Act (IAEA) (Prob. Code, § 10400 et seq.).[3] In 1993 and 1994, Dario filed three inventories of the estate's property. The first showed $1,403.91 in a checking account and three vehicles-- a 1986 Dodge Ram Charger, a 1985 Dodge utility truck, and a 1972 Chevrolet pickup, valued at $4,800, $4,000, and $250, respectively--and $400 worth of personal effects. The second inventory listed five parcels in Nevada County, totaling 200 acres, appraised at $40,000 each for a total of $200,000. The third listed 566 acres in Trinity County appraised at $356,000, and a Timber Purchase Agreement appraised at $73,124.40. The appraisals, except for the checking account, were done by a probate referee.

In 1995, Dario's attorney, Thomas Craven of Diepenbrock, Wulff, Plant & Hannegan LLP, petitioned for statutory and extraordinary attorney fees. Craven stated that only the final details of the administrator's final account and report and petition for final distribution remained to be done and he had already prepared a rough draft. He requested 95 percent of the statutory fees. The court awarded statutory fees of $10,500, extraordinary fees of $12,830, and $9.91 in costs.

---

Robie was replaced by Associate Justice Jonathan K. Renner, who listened to the recorded oral argument pursuant to agreement of all counsel and otherwise fully participated in the case.

[3] Further undesignated statutory references are to the Probate Code.

*1998-2010: Dario Suspended, Communication Problems, Special Administrator Appointed and Resigned*

In 1998, the Diepenbrock firm petitioned to withdraw as counsel, citing Dario's lack of cooperation and response. The probate court allowed the withdrawal, suspended Dario's administrator powers, and appointed James Moore as special administrator. The court ordered Dario to provide a complete accounting by July 8, 1998. Dario failed to appear for several hearings and the court ordered him cited.

In 2010, Moore resigned as special administrator. He reported that 17 attempts were made to serve Dario with a citation to appear, but all were unsuccessful. Moore was unsuccessful in his attempts to investigate the timber contracts and was unable, due to lack of funds, to determine the value of the timberlands. He met Tina in 2010 and recommended that she be appointed as personal representative of the estate. The court appointed Tina special administrator.

*2011: Dario Files First Account and Report of Administrator*

On March 25, 2011, Dario filed the first account as well as his only report as administrator. Dario reported, for the first time in a document filed with the court, that *all* the real property of the estate was encumbered at the time of his father's death. Each of the five Nevada County parcels was encumbered with a loan balance of $25,000, requiring a total of $6,903.40 in payments each quarter. There was $74,817 owed on the Trinity County property. The decedent owed property taxes on all properties and had entered into redemption plans with county tax collectors.

Dario claimed that when changes in environmental regulations made it impracticable to harvest the Trinity property, he permitted his own property to be harvested to fulfill the timber contract and considered the proceeds to be property of the estate. He represented that after the Farmers Home Administration accelerated the two loans on the Trinity property and intended to foreclose, he had sold the property for

4

$195,000, a loss of $161,000 from its appraised value on the third inventory. After paying off the loan and closing expenses, the net proceeds to the estate were $112,189.98.

According to his report, in 1995 Dario had entered into a Timber Harvest Plan for the Nevada County properties, which resulted in income of $90,607.95 to the estate. In 2002, he sold one of the five Nevada County parcels to pay property taxes. The property was sold for $30,000, a $10,000 loss from its appraised value, and the net proceeds of the sale were $25,294.37. Dario claimed he and his brother Joey had advanced personal funds to meet expenses relating to the properties, and that he was owed $21,821.50. He did not provide any specifics.

Dario's account is even less revealing than his report. Nowhere are the liabilities of the estate--the loan balances and back property taxes--listed or quantified. Instead, the account shows an estate originally worth $639,978.31, with property now on hand, using the original appraisal values, of only $168,800. The account lists disbursements, by date, payee/description, and amount totaling $412,035.64. The disbursement list indicates that much of the timber contract proceeds for the Nevada County parcels were assigned to Tim Roark to repay the loans on those properties.[4] Property taxes and loan payments made up most of the disbursements.

The account also included a "Cash Reconciliation to Determine Funds Advanced by Administrator to Pay Estate Expenses." It totals cash, receipts, and net sales proceeds, and then subtracts disbursements to conclude that Dario has advanced the estate $21,821.50. Again, there is no specific accounting of how much or when Dario advanced funds to the estate or was repaid for the supposed advancements.

---

[4] Tim Roark is apparently the same person as Robert T. Roark, who testified at trial. As explained at trial, Roark is a real estate broker in Nevada County. He was the agent for the sale of the five Nevada County parcels to the decedent and was also a member of a group which was a partner in the ownership of the parcels and which held a deed of trust on the five parcels.

5

Tina objected to the report and account. She objected to the disbursements and requested documentation to support them. In supplemental objections, Tina objected to Dario's failure to distribute the estate and the loss of value of the property. She claimed he profited from administration of the estate and again requested documentation to support the disbursements.

Dario demurred to the objections, contending the objections failed to state facts upon which relief may be granted. He contended he had accounted for the entire 19-year history of administration, preserving the estate while he was unable to reach Tina for a consensus on distribution. While he continued to administer the estate after his powers as administrator were suspended, he claimed he was not made aware of the suspension. In response to Tina's supplemental objections, he raised the affirmative defense of laches and estoppel due to what he claimed was her unreasonable delay in seeking settlement or distribution of the estate.

Dario provided Tina with some documentation. The record on appeal contains only a list of these documents. For most items on the list, it is impossible to determine what precise type of documentation was provided, whether a cancelled check, the underlying obligation (tax bill, loan statement, etc.), or something else.

*2012 Trial*

Dario did not appear at trial. The parties stipulated to a number of facts concerning the procedural aspects of the case: (1) Dario's payment of funeral expenses and a State Board of Equalization debt without filing a creditor's claim; (2) the sales and net proceeds of the Trinity property and one Nevada County parcel; (3) that it was unclear if Dario was aware his powers as administrator were suspended; and (4) that there was a conflict between Tina and other family members. Tina indicated she was not "challenging the numbers of which the accounting is contained [*sic*]," but rather disputing "the conduct and the activities of [Dario] as the suspended administrator." She asserted Dario had the burden to substantiate the *contents* of his accounting and had

6

provided certain documents that purported to do so, but no foundation had been laid for the documents and they were inadmissible hearsay.

Dario's counsel called witness Debra Rose, counsel's wife who worked in his firm and had prepared the account based on figures and documents that were received from Dario. When Tina objected, the probate court agreed that Rose could testify only that she was *given* information, not that the information was correct.[5] Rose testified she did not show the dates Dario advanced funds to the estate because it "would be voluminous and repetitive" and "wasn't relevant to the estate."

Joey testified he agreed with Dario about selling some of the property to pay expenses. He did not know if Dario had contacted Tina. He wanted to keep the land as the "last of my father's legacy."

Tina testified she had last spoken with Dario in 1993 when their mother died. She had exhausted her efforts to contact him by phone or mail. She was not contacted about the sale of property or the taxes. She originally wanted to keep the property, especially the Trinity property which was "dear to my heart," but changed her mind after some of it was sold. She now wanted to sell and get resolution after 20 years.

At the close of evidence, the court ordered closing arguments in writing. Before they were due, the court learned that Dario had taken his own life and was likely deceased at the time of trial. The court declared a mistrial.

*2013 Trial*

About a year and a half later, the case resumed for retrial with Joey substituted for Dario. The parties agreed the court could consider the testimony from the previous trial. In addition to the previous stipulated facts, the parties agreed there was no objection to the numbers in the accounting, in and of themselves--the concern was the propriety of

---

[5] Dario's counsel later attempted unsuccessfully to call *himself* as a witness to fill this gap.

Dario's activities as administrator. Tina further narrowed the issues, indicating her major concerns were the failure to account for the proceeds of the sale of the Trinity property and the Nevada County parcel, and the failure to account for the timber harvest agreement listed in the inventory. Other concerns were the reduction in value of the Nevada County property due to the delay in distribution, payment of certain expenses without a creditor's claim, and the failure to distribute the trucks and other personal property.

The major dispute at trial was whether and how the law required that the account be proven. Tina took the position that because she contested the account, the fiduciary had the duty to provide satisfactory evidence of the correctness of each charge. As Dario's successor, Joey took the position that the account had been stipulated to and was "self-proving." Twice, the court asked Joey's counsel to "show us where [certain] funds are accounted for" and each time counsel represented that another witness would address that issue. Counsel wanted to call Rose, who prepared the account. The court ruled she could not testify as to hearsay, rejecting the argument that because Tina did not "dispute the numbers," the adoptive admissions exception applied to Rose's proposed testimony as to what Dario told her about the documentation that he provided. No other witness was called to explain the accounting for the sales proceeds.

The only witness at the second trial was Joey. He testified the three siblings had decided to keep their father's land in 1992 and there was no subsequent discussion. This agreement was not in writing. Joey claimed Dario had paperwork from which he prepared the account, but did not know if Dario kept an account of sums he advanced to the estate. The two Dodge pickups were at his or Dario's house; Joey claimed the Chevy pickup was gone before his father died. Joey testified they would be "lucky" to get $30,000 for each remaining parcel of the Nevada County property now.

8

Tina introduced portions of Dario's deposition to show she received no notice of the property sales.[6]

*Judgment*

The probate court found Dario had breached his fiduciary duty to his father's estate in several ways: by selling property without notice to other heirs or obtaining a re-appraisal; by failing to account for $112,189.98 in proceeds from the sale of the Trinity property, $25,294.37 in proceeds from sale of the Nevada County property, and $73,124.10 in proceeds from the 1990 timber purchase agreement; by engaging in a plan to exclude Tina from her inheritance through a strategy of non-communication; by failing to comply with the court order for an accounting for more than a decade and failing to cooperate with special administrator Moore; and by failing to distribute the three trucks and the personal property. The court did not surcharge Dario for funeral expenses or a Board of Equalization payment, even though no creditor's claim had been filed for either. The court surcharged Dario's estate $260,059.45, which exceeded his share of his father's estate, so he took nothing.[7] The remaining four parcels of Nevada County property were to be distributed to Tina and Joey, with Tina to select the two parcels she wanted. Tina would sell any remaining property and distribute the proceeds equally between Joey and her.

---

[6] Joey's counsel objected to introduction of Dario's deposition, claiming he had not seen or read it. We find this odd, because that same counsel represented Dario during the deposition and was present thereat.

[7] The court did not itemize the surcharge. It appears to be the total of the property not distributed and the proceeds not accounted for plus $40,001. Presumably, the $40,000 is for the loss of value of the four Nevada County parcels and one dollar is for other breaches.

## DISCUSSION

### I

### *Duty of Administrator of Estate*

An executor or administrator " 'is an officer of the court and occupies a fiduciary relation toward all parties having an interest in the estate.' [Citation.]" (*Estate of Sanders* (1985) 40 Cal.3d 607, 616.)  He has the duty " 'to preserve and protect the estate, to satisfy and discharge all debts and claims and to distribute the residue of the property to those entitled to receive it.' [Citation.]" (*In re Estate of Bonanno* (2008) 165 Cal.App.4th 7, 17-18.)  In managing the estate, he must "use ordinary care and diligence." (§ 9600, subd. (a).)  Breach of this duty of care will expose the administrator to surcharge liability.  (§ 9601; see Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2014) ¶ 9:3.14.)

The probate court granted Dario full authority to administer the estate under IAEA.  An IAEA administrator has "the same fiduciary duties as an administrator under any other Probate Code section." (*Estate of Davis* (1990) 219 Cal.App.3d 663, 671.)  Under the IAEA, the administrator may take some actions without court supervision (§ 10500, subd. (a)), but the administrator is required to obtain court supervision for certain actions, including settlement of accounts (§ 10501, subd. (a)(3)).  An IAEA administrator with full powers may sell property of the estate without complying with the usual requirements applicable for a court confirmation of sales of property.  (§§ 10511, 10503.)  He must, however, give notice of the proposed sale to each heir whose interest in the estate would be affected.  (§§ 10580; 10581, subd. (b).)

The administrator must file an account that includes a financial statement of property of the estate and a report of administration.  (§ 10900.)  All matters relating to an account may be contested "for cause shown." (§ 11001.)  The validity of any allowed or approved claim against the estate may be contested by an interested party at any time before settlement of the report or account in which it was first reported.  (§ 9254, subd.

(a).) Where the administrator acts under the IAEA, he bears the burden of proof to establish the validity of the contested claim. (*Ibid*.)

The probate court has discretion to surcharge the administrator for proven breaches of fiduciary duty as "appropriate under the circumstances," for losses caused to the estate. (§ 9601, subd. (a); 14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills and Probate, § 525, pp. 602-603.) "[A] court may not surcharge a fiduciary without substantial evidence that the particular loss was caused by the fiduciary's fault. [Citation.]" (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 531 (*Borissoff*).)

II

*The Surcharges*

A. *Effect of the Stipulation*

Joey contends Tina's stipulation not to challenge the numbers shown on the account eliminated the need to "prove up" the account. He contends the stipulation to the numbers was an admission that "all transactions were truly and correctly shown," relying on the adoptive admission exception to the hearsay rule (Evid. Code, § 1221). We disagree. Joey fails to establish that Tina manifested her belief in the *truth* of the account, as required for an adoptive admission. While Tina did not challenge the numbers shown on the account, she did expressly challenge Dario's *conduct*, which we interpret as challenging the *validity of the transactions*--especially the disbursements-- shown on the account, except those as to which she expressly stipulated. Because Dario was an IAEA administrator, he bore the burden of proof once Tina objected. (§ 9254, subd. (a).) An administrator can carry this burden of proof by providing documentation supporting the challenged transactions. (See *Estate of Auslender* (1960) 53 Cal.2d 615, 632 [reversing order allowing account where there was no proof]; § 10901 [requiring personal representative to produce documents for inspection].)

Although Dario provided Tina with supporting documentation, he still failed to carry his burden of proof. First, as noted, the record on appeal does not indicate *what*

11

documents he provided.  Therefore, we cannot determine if they were sufficient to substantiate the account.  It is appellant's burden to provide an adequate record on appeal to show error.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)  Second, Tina challenged the documents and Rose's proffered testimony relying on them as unauthenticated hearsay and the probate court *sustained the objection*.  Joey does not challenge the court's ruling sustaining the objection and does not address the hearsay issue.  Instead, he simply asserts the account and all disbursements listed therein were "undisputed."  They were not; that was the point of the two trials--to prove their validity.  Joey failed to provide *any* evidence on this issue; the evidence he attempted to provide at trial was not allowed and he cannot now ignore that fact and expect us to agree that there was no dispute.

B.  *Failure to Account for Proceeds from Sale of Property and Timber Contract*

The parties stipulated that the sale of the Trinity property netted the estate $112,189, and the sale of the Nevada County parcel netted the estate $25,294.37.  Joey contends Dario properly accounted for these proceeds in the accounting; the proceeds were used to pay "the undisputed disbursements."  As explained *ante*, the validity of the disbursements was *not* undisputed because Dario failed to adequately substantiate them.  Accordingly, the probate court properly surcharged Dario for these proceeds.

The same analysis supports the surcharge for the timber contract proceeds.  The third inventory listed the timber purchase agreement valued at $73,124.40.  Dario claimed he used his own timber to fulfill this contract, but treated the proceeds as belonging to the estate.  Again, Joey claims these proceeds were used for "undisputed disbursements."  Since the disbursements were not undisputed, the probate court properly surcharged Dario for the timber contract proceeds.

C.  *Failure to Distribute Vehicles and Personal Property*

The probate court surcharged Dario for $9,450 for his failure to distribute his father's vehicles and personal property:  a 1986 Dodge Charger ($4,800), a 1985 Dodge

12

truck ($4,000), a 1972 Chevy truck ($250), and personal property ($400). The evidence was undisputed that this property had not been distributed. Instead, this property was kept--and presumably used--by Dario and Joey for their own purposes. An executor or administrator is liable for estate property he uses for his own needs. (*Estate of McSweeney* (1954) 123 Cal.App.2d 787, 792.) As these were all depreciable assets, they have little, if any, value over two decades later. The probate court has discretion to surcharge the administrator for any loss or depreciation, and may even charge interest. (§ 9601, subd. (a)(1).)

Joey raises a myriad of objections to this surcharge and Tina's general claim that Dario breached his fiduciary duty by failing to distribute the assets of the estate. He contends the equitable remedy of surcharge was inappropriate because Tina had an adequate remedy at law; she could have petitioned for distribution. Joey ignores the evidence that Dario failed to comply with court orders, evaded service, and could not be contacted for many years. Tina's previous attempt to use the court process was unavailing.

Seeking to put the blame on Tina rather than on Dario, Joey contends she acquiesced in the delay in distribution. At trial, he unsuccessfully attempted to raise this laches defense. Joey relies on *Estate of Kampen* (2011) 201 Cal.App.4th 971. In *Kampen*, the executor of two estates delayed in distributing the estates after obtaining a final order of distribution in 1999. In 2009, the beneficiary of both estates, the San Francisco Opera Association, who had known of the bequests since 1996, petitioned to surcharge the executor for breach of fiduciary duty. The probate court surcharged the executor for loss of value to the estates caused by his delay and surcharged him for compensation he received as to one estate, but denied any damages not based on statute. (*Id*. at p. 976.) In affirming, the appellate court found the executor could assert an affirmative defense of laches for the Opera Association's unreasonable delay in asserting its claim and this defense barred any claim for interest. (*Id*. at p. 999.) The court found

13

the Opera Association acquiesced in the executor's delay in distributing the estate and the executor suffered prejudice because he had to pay bond premiums for the period of delay. (*Id*. at pp. 1000-1001.)

We find *Kampen* is distinguishable. There, the Opera Association knew at all times the amount and nature of the bequests and failed to pursue them. There was no evidence that the executor failed to comply with court orders, evaded service, failed to cooperate, or refused to contact anyone. Here, Tina attempted to remove Dario as administrator, but he failed to appear in court, receive service, cooperate with the special administrator, or contact anyone--the court, his attorney, or Tina. Further, in *Kampen,* the laches defense applied only to the claim for interest, not to the failure to distribute the estate assets. Dario was not charged any interest for his unreasonable delay, so *Kampen* does not aid him. Tina cannot be blamed for Dario's egregious failure to fulfill his fiduciary duties as administrator. For the same reasons Joey's attempt to blame Moore, as special administrator, or Tina, as successor administrator, fails.

Joey next contends Dario had no duty to distribute the estate because there was no order of distribution and because the estate faced substantial debts (not acknowledged on the inventories). As administrator, Dario had a duty to distribute the remaining estate property after the debts and claims were paid. (*Estate of Denman* (1979) 94 Cal.App.3d 289, 292.) There is no evidence he used the vehicles or personal property to pay the estate's debts. We see no reason he could not have distributed these assets before they depreciated in value.

Joey suggests it was reasonable to leave the vehicles and property with Dario and Joey as "those presumptively entitled to it." While this strategy may have been reasonable in the short term, after it continued for decades it supported the probate court's view that Dario administered the estate for his and Joey's benefit, to the exclusion of Tina.

14

D. *$40,000 Surcharge*

The probate court did not specifically identify the basis for the $40,000 surcharge. The parties assume it was based on the loss of value of the four remaining Nevada County parcels, from $40,000 to $30,000 for a loss of $10,000 each in value. Joey contends Dario could not be held liable for a decline in value due to market conditions. Tina contends the evidence showed Dario was at fault for the decline because he prematurely harvested the timber property.

Roark, the real estate broker who originally handled the sale of the Nevada County parcels to the decedent, testified about the current value of the property. He testified that property in that remote area is used for three purposes: recreation, Christmas tree farming, and timber production. He described the minimum 20-year cycle for timber and the necessary incubation period after logging to permit the property to "heal up." The Coltri property had been logged heavily in 1976 and again in 1994 or 1996. The property had white fir and red fir, and some old growth cedar, which was spectacular to look at but the trees that had been left had defects. The market for white fir and red fir lagged in price behind Ponderosa pine, sugar pine, and Douglas fir. At the moment there was no market for Ponderosa pine and Douglas fir and "less than a market" for white fir and red fir. Roark testified the current market for timber was "really terrible." The value of the property was about the same as in 2002, when Dario sold a parcel; the value was $35,000-$36,000 if the seller carried a note, but only $30,000 a parcel for cash.

A court may not surcharge an administrator for a loss unless the loss was the administrator's fault. (*Borissoff, supra,* 33 Cal.4th at p. 531.) The evidence shows the decline in value of the Nevada County property was due to a change in market conditions. There was no evidence as to when the decline in market value occurred, and there was evidence of an initial agreement to keep the property. There was no evidence that the loss was Dario's fault because he failed to distribute the property earlier. Roark's testimony about the 20-year cycle for timber harvesting and the need for an incubation

period was in response to a question about whether he would recommend selling the property in 2012. Roark did not testify that Dario had prematurely harvested the timber in 1994 and that the premature harvest caused the loss in value. Because substantial evidence did not support a finding that Dario was responsible for that particular loss, the probate court abused its discretion in surcharging him $40,000.

E. *One Dollar Surcharge for Other Breaches*

The probate court found Dario committed numerous breaches of fiduciary duty. One dollar of the total surcharge was, presumably, for these breaches. It was undisputed that Dario sold the Trinity property and one parcel of the Nevada County property without giving Tina notice, in violation of section 10511. Tina testified she would have liked to preserve at least some of the Trinity property. As discussed, the evidence supports the trial court's conclusion that Dario planned to exclude Tina from her inheritance by failing to communicate with her. Dario also failed to comply with court orders. While Joey claims there is no evidence that Dario knew of the 1998 court order stripping him of his administrative powers, we reject this argument. Dario was a fiduciary, the administrator of an estate. As such, he was obligated to keep apprised of his duties. If he lacked actual notice of any order, his ignorance was the result of his willful failure to communicate with his own counsel as well as the court. Given the abundant evidence of multiple breaches of Dario's fiduciary duty, and the great length of time over which these breaches continued, we reject Joey's unseemly quibble over the one dollar surcharge. We find the surcharge was within the probate court's discretion to impose a measure of liability "that is appropriate under the circumstances." (§ 9601.)

## III

*Other Contentions*

Joey's remaining contentions are premised on his argument that the surcharges were improper. Because we have upheld the probate court's surcharge, except to reduce it by $40,000, they fail.

16

Joey contends the probate court erred in excluding Dario from distribution of his father's estate. He contends the estate should be divided three ways, for each child, *after* reimbursing Dario $21,821.50 for his advances to the estate. As discussed, Dario failed to account for any sums he advanced to the estate. The surcharge, now over $220,000, still exceeds Dario's share of his father's estate, even if he were to receive a reimbursement for advances. The probate court properly excluded him from any distribution.

Joey further contends the probate court erred in denying Dario's motion for attorney fees and costs under section 11003 and Code of Civil Procedure section 128.5 for bad faith by Tina. We have upheld a substantial number of Tina's requests for surcharge. Thus, her contest of the account had "reasonable cause" (§ 11003) and was not "totally and completely without merit" (Code of Civ. Proc., § 128.5, subd. (b)(2)). Joey is not entitled to an award of attorney fees for bad faith.

## DISPOSITION

The judgment is modified to reduce the surcharge of Dario's estate from $260,059.45 to $220,059.45. In all other respects, the judgment is affirmed. Tina shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)


      DUARTE      , J.


We concur:


      RAYE      , P. J.


      RENNER      , J.

17